UNITED STATES of America,
Plaintiff–Appellee,

v.

Darrell WIMBERLY, Defendant–
Appellant.

No. 93–1638.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1995.

Decided July 10, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 23, 1995.

Barry Rand Elden, Asst. U.S. Atty., Criminal Receiving, App. Div., Chicago, IL, John P. Elwood (argued), Dept. of Justice, Criminal Div., Washington, DC, for U.S.

Frank E. Stachyra, Cascino Vaughan Law Offices, Chicago, IL, for Darrell Wimberly.

Before CUDAHY and COFFEY, Circuit Judges, and WALTER, District Judge.[1]

WALTER, District Judge.

In June, 1993, after a trial by jury, defendant Wimberly was convicted of three counts of sexual molestation of his stepdaughter. Count One charged Wimberly with engaging in a sexual act with a person under 12 years of age. 18 U.S.C. § 2241(c). Counts Two and Three charged Wimberly with engaging in sexual contact with a person under 12 years of age. 18 U.S.C. § 2244(a)(1).

The victim, K.M., lived with her mother, Elizabeth, defendant Wimberly and Wimberly's son Scott. Trial testimony demonstrated that this molestation began in December 1986 and ended in August 1989, when law enforcement authorities first approached Wimberly. Incidents of molestation occurred while the family lived in California (Tr. 122), in Salem, Illinois (Tr. 129), and at Fort Sheridan Army Base, near Chicago (Tr. 141). The latter resulted in federal jurisdiction.

These charges stemmed from statements made by a friend of the victim's, identified only as "C.B.", to an agent with Ft. Sheridan's Criminal Investigation Division ("CID"). CID then initiated an investiga-

---

1. The Honorable Donald E. Walter of the United States District Court for the Western District of Louisiana, sitting by designation.

284

tion, notified the FBI, and expelled Wimberly from the base. Shortly thereafter, Wimberly underwent counseling with a psychotherapist. During these sessions Wimberly admitted molesting K.M. and another stepdaughter roughly thirteen years earlier.

## DISCUSSION

■ The first issue raised on appeal is an alleged violation of the Speedy Trial Act. Though Wimberly was arraigned on August 16, 1991, the trial did not begin until June 22, 1992. The trial court excluded September 4, 1991 through October 30, 1991 to allow preparation and determination of pretrial motions. Wimberly does not contest this exclusion. The trial was then scheduled for December 1991 but the defendant requested a continuance for health reasons. The court acquiesced and rescheduled trial for March 23, 1992. The government then sought a continuance. After an evidentiary hearing, the court postponed the trial to June 22, 1992 and excluded the time between February 14, 1992 and the new trial date as "in the interests of justice".

■ The defendant argues the court improperly excluded the February–June period. 18 U.S.C. § 3161(h)(8) governs the exclusion of time when a trial judge determines a continuance is in the ends of justice:

> [I]f the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection, unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

This court reviews a district court's interpretation of the Speedy Trial Act *de novo* and it reviews the district court's factual findings for clear error. *United States v. Culp*, 7 F.3d 613, 617 (7th Cir.1993). A trial court's decision to grant a continuance under the Act

is within the court's discretion and will not be reversed, absent a showing of both abuse of discretion and actual prejudice. *United States v. Tanner*, 941 F.2d 574, 579 (7th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992).

At the hearing on the continuance, the judge expressly stated his reasons for granting the government's motion. (Hearing of 2/13/92 pp. 6–7). The court noted that the child was in eighth grade, the March trial date would require her missing school, that the June date would take place during her summer vacation, and that the June date would allow her mother to accompany her. The court found the last fact to be most important. The young girl, clearly an essential witness, could not travel without her mother. The mother, still a member of the U.S. Army, could not leave her station in Hawaii during March. The court further noted that the original December trial date, which accommodated the child's school schedule, was upset at the defendant's request. The court found these facts, *in toto,* sufficient to stay the Speedy Trial Act. The court clearly stated its reasons, all of which were proper considerations in the court's exercise of its discretion. The time was properly excluded; defendant's Speedy Trial Act argument fails.

The second issue raised on appeal addresses testimony regarding admissions defendant made to his psychotherapist. During his counselling sessions, Wimberly admitted to molesting the victim and to molesting another stepdaughter approximately thirteen years earlier. The district court denied defendant's motion in limine to exclude these admissions and overruled defendant's contemporaneous objection to the therapist's testimony. The psychotherapist testified as to both admissions. The defendant argues that (1) any communications between himself and his psychotherapist were privileged, and (2) the previous molestation incident was impermissible other crime evidence in violation of Fed.R.Evid. 404(b).

■ Federal privilege law applies to criminal cases brought in federal court, thus defendant's argument regarding the Illinois Confidentiality Act is irrelevant. *United*

*States v. Gillock,* 445 U.S. 360, 368, 100 S.Ct. 1185, 1191, 63 L.Ed.2d 454 (1980); Fed. R.Evid. 501. This Court has recently adopted a psychotherapist/patient privilege under Fed.R.Evid. 501. *Carrie Jaffee v. Mary Lu Redmond, et al.,* 51 F.3d 1346 (7th Cir.1995) This case, however, does not require inquiry into whether the privilege governs, or whether it should be applied retroactively, because Wimberly knowingly waived any such privilege.[2] In addition, Wimberly signed authorization forms which released all his counselling related records, reports and opinions to both Elizabeth and to the FBI. Waiver is the voluntary and intentional relinquishment of a known right. *Loyola Univ. v. Humana Ins. Co.,* 996 F.2d 895, 901 (7th Cir.1993). The district court concluded Wimberly had waived any privilege he may have had. We agree.

■ As to appellant's argument regarding the other stepdaughter testimony, the trial judge recognized the potential prejudice but allowed it for a very limited purpose: credibility. Fed.R.Evid. 404(b) prohibits the use of other crimes, wrongs or acts evidence to show action in conformity therewith, but allows such evidence for other purposes. At trial, Wimberly had argued that his confession to the therapist regarding this victim was made to placate his wife. Thus, the trial court found that the other stepdaughter confession corroborated the confession regarding K.M. (Tr. 234–235). We agree. Wimberly's desire to please his wife did not require him to fabricate a story concerning a totally unrelated incident. Instead, the other confession suggests he spoke with the candor of an individual seeking to absolve himself.

■ This Court subjects evidence admitted over a 404(b) objection to a four part test. *United States v. Williams,* 31 F.3d 522, 527 (7th Cir.1994). First, the evidence must be relevant to something other than character. As discussed above, the other stepdaughter evidence was relevant to credibility. Second, the act in question must be similar in nature and close in time to the crime. Here, the other crime occurred thirteen years earlier, weighing against admissibility. But both the crime charged and the other crime evidence involved sexual molestation of stepdaughters; they were virtually identical in nature. These two components effectively offset each other so as to eliminate consideration of the second prong. Third, the evidence of the prior act must be reliable. Wimberly confessed to his psychotherapist. As discussed above, he had no need to fabricate this other, unrelated molestation. It was sufficiently reliable. Finally, the probative value of the evidence must outweigh any undue prejudice caused by its admission. The past molestation was undeniably prejudicial to the defendant. It labeled him as one of society's most feared deviants, the habitual child molester. The probative value, however, was even greater. Wimberly's confession to his psychotherapist regarding the crime charged was crucial evidence. This other confession bolstered the credibility of that crucial testimony. We find this evidence satisfied the four part test enunciated in *Williams.*

The court below gave appropriate limiting instructions. In his preliminary instructions, he explained the concept of limited-use evidence. After the therapist's testimony, the court gave a detailed limiting instruction. The Court gave another limiting instruction in its final instructions. The limited purposes for which this evidence was introduced fell within the parameters established in Fed. R.Evid. 404(b).

### The Wesley Statement

■ Army CID Agents Wesley and Werdertich were the first to interview the victim, who was 10 years old at the time, concerning these allegations. After the interview, Agent Wesley prepared a written report, which the victim examined for mistakes, made certain corrections, and then signed an attestation clause. The report contained several statements inconsistent with the victim's trial testimony. Agent Wesley did not testify, hav-

---

2. Wimberly signed the following waiver before undergoing counselling with the Community Youth Network:

I have been informed that the State of Illinois severely limits confidentiality in cases involving child abuse and that CYN staff is required by law, to report cases of known or suspected child abuse to local authorities ...

ing been transferred to Korea. Defendant sought to introduce the report for impeachment purposes. The trial court excluded it as hearsay. On appeal, Wimberly argues the exclusion was reversible error because it prevented him from attacking the credibility of the government's key witness.

Fed.R.Evid. 803(5) exempts recorded recollections from the hearsay ban:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that memory correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The trial court found that the young witness had not adopted the statement as her own. We disagree.[3] She read the document, reviewed it for errors, made corrections, initialed those corrections, and signed the attestation clause. The exclusion as hearsay was error. Furthermore, Fed.R.Evid. 613 specifically allows examination of a witness concerning a prior statement made by that witness. The party seeking to introduce the statement must give the witness an opportunity to explain or deny the prior statement. Fed.R.Evid. 613(b). Prior inconsistent statements are admissible even though the witness admits making the prior inconsistency. *United States v. Lashmett*, 965 F.2d 179, 182 (7th Cir.1992). We now proceed to whether the error so prejudiced the defendant as to warrant a new trial.

Though the district court may have erred in an evidentiary ruling, this Court will not reverse if the error was harmless. *United States v. Saunders*, 973 F.2d 1354, 1359 (7th Cir.1992), *cert. denied,* ─── U.S. ───, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993). Instead, this Court will only overturn a conviction on evidentiary grounds if the error had a "substantial influence over

the jury". *United States v. Nelson,* 5 F.3d 254, 256 (7th Cir.1993), (quoting *United States v. Fairman,* 707 F.2d 936, 941 n. 5 (7th Cir.1983)). If the harmlessness of the error is in grave doubt, relief must be granted. *O'Neal v. McAninch, Warden,* ─── U.S. ───, ───, 115 S.Ct. 992, 996, 130 L.Ed.2d 947, (1995). When the error precludes or impairs the presentation of a defendant's sole means of defense, the error has had a substantial and injurious effect on the jury. *United States v. Hogan,* 886 F.2d 1497, 1512 (7th Cir.1989), (quoting *United States v. Peak,* 856 F.2d 825, 834 (7th Cir.1988)). Finally, if the evidence of guilt was overwhelming and the defendant was allowed to put on a defense, even if not quite so complete a defense as he might have reasonably desired, this Court will find the error harmless. *United States v. Hanson,* 994 F.2d 403, 406 (7th Cir.1993), (quoting *United States v. Cerro,* 775 F.2d 908, 916 (7th Cir.1985)).

Though the District Court should have allowed defense counsel to read portions of the statement for impeachment, cross examination of several witnesses disclosed some of the inconsistencies. During the cross examination of the victim, defense counsel noted specific inconsistencies (Tr. 182, l.10–20; 222, l.11) but the court instructed the jury to disregard that line of questioning. (Tr. 184, l.15; 227, l.10). Defense counsel attempted to note an inconsistency regarding the date of the alleged acts (Tr. 325, l.16) but the court sustained the government's objection. (Tr. 328, l.1). Defense counsel alluded to inconsistencies several times without objection. (Tr. 306, 331, 345, 346).

At the time of the allegations, C.B. was a close friend of the victim. C.B. was later hospitalized as suffering from a delusional condition which diminished her ability to distinguish reality from fantasy. One defense theory was that C.B., who was older than the victim, created many of the stories which eventually became the victim's allegations. Cross examination of Elizabeth, the victim's

---

**3.** The district court found that because the interview took place late at night and K.M. was young and tired, the report lacked sufficient indicia of

credibility. Such factors go the weight of the evidence, not its admissibility.

mother, regarding the original interview with Wesley, allowed the defense to develop this theory. (Tr. 461–462). The court also allowed counsel to explore the inconsistency regarding the date of one molestation via cross examination of Elizabeth. (Tr. 484–485).

Cross examination of CID Agent Werderitch also disclosed an important inconsistency. One of the most graphic sexual acts about which K.M. testified at trial was not mentioned in the Wesley statement. Agent Wedertich admitted that K.M. never disclosed such an act in the original CID interview, which was the basis of the Wesley statement. (Tr. 647, l.22–25).

It is important to emphasize that Wimberly's conviction did not rest entirely upon K.M.'s testimony. Ulrich Senz, Wimberly's psychotherapist, testified that Wimberly had admitted to fondling the victim over a six month period. (Tr. 248, 275). Special Agent Himebauch acted as case agent for the FBI in this matter. He testified that during one interview, Wimberly admitted to touching the victim on the vagina on four separate occasions. (Tr. 522–523). Taken together, this testimony demonstrated overwhelming evidence of guilt.[4] Accordingly, we find the refusal to allow defense counsel to read the Wesley statement to be harmless error.

■■■■■■ In addition to the Wesley statement, Wimberly argues other evidentiary rulings denied him a fair trial. Wimberly argues the trial court thwarted effective cross examination "through a number of devices". Wimberly argues these evidentiary errors were so numerous, that "only a complete reading of the transcript of the cross would do them justice". This Court requires an appellant to make specific arguments or allegations of error for such allegations to be reviewable. *United States v. Nash,* 29 F.3d 1195, 1201 (7th Cir.1994). Indeed, this circuit has repeatedly warned litigants that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues). *United States v. Berkowitz,* 927 F.2d 1376, 1385 (7th

Cir.1991). Wimberly's conclusory allegations do not satisfy this standard; he has waived this issue.

■■■■■ In the next issue raised on appeal, Wimberly argues there was a prejudicial variance between the dates of molestation alleged in the indictment and the dates presented at trial. A variance occurs only when "the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Johnson,* 26 F.3d 669, 686 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct 344, 130 L.Ed.2d 300 (1994). Count Three of the indictment alleged molestation "in or about July 1989". The government presented evidence of molestation in early August 1989, not July. An appellant bears a more difficult burden when the variance involves a date. Such a variance does not require reversal if the date proved is within the statute of limitations and before the indictment date. *United States v. McKinney,* 954 F.2d 471, 480 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992). Given this standard and the "on or about" language used in the indictment, this slight variance does not warrant reversal.

■■■■■ The final argument raised on appeal attacks the trial court's application of the sentencing guidelines. This court reviews sentencing determinations under a deferential standard; factual findings will not be reversed unless they are clearly erroneous, while guidelines' interpretations warrant *de novo* review. *United States v. Gio,* 7 F.3d 1279 (7th Cir.1993). Appellant argues the trial court's imposition of a two level increase for obstruction of justice abused its discretion. The Pre–Sentence Report recommended the increase because Wimberly lied during a pre-sentencing interview. The trial judge's decision to award the increase, even if based on the PSR alone, was not an abuse of discretion.

■■■■■ Nor did the court err in awarding a two level increase due to the defendant's custodial relationship with the victim. Ap-

---

4. Wimberly also argued the evidence was insufficient to support the verdict. The overwhelming

evidence of guilt discussed above disposes of that argument as well.

pellant argues that there was no evidence of any legal custodial relationship between the defendant and the victim, his stepdaughter. Guideline § 2A3.1(b)(3) mandates the 2 level increase for abuse by a custodian. As noted in the PSR, the commentary to that section calls for a broad definition of custody, including both temporary and permanent control. As the victim's stepfather, Wimberly had sufficient custody over the victim to warrant the enhancement.

The final guidelines argument alleged double counting in Count One via a four level increase due to the victim's age. On Count One, Wimberly was convicted of engaging in a sexual act with a person under 12 years of age. 18 U.S.C. § 2241(c). Sentencing Guideline § 2A3.1 applies to both 18 U.S.C. § 2241 and § 2242. The base offense level under guideline § 2A3.1 was 27.[5] The trial court applied a 4 level increase due to the victim's age, pursuant to § 2A3.1(b)(2). In both objections to the PSR and in appellate argument, Wimberly argued the victim's age was already accounted for because his underlying conviction was for sexual abuse of a child under 12 years of age.

Both the Eight and Tenth Circuits have addressed this issue; neither found similar increases under this subsection to be double counting. *United States v. Balfany*, 965 F.2d 575, 584 (8th Cir.1992); *United States v. Ransom*, 942 F.2d 775 (10th Cir.1991). Guidelines § 2A3.1 applies to both 18 U.S.C. § 2241 and § 2242. This is significant because a violation of § 2242 does not require that the victim be less than 12 years old. A conviction under either statute results in the same base offense level: 27 months. The specific enhancements provided for in § 2A3.1(b) account for more egregious conduct, including abuse with a weapon, abuse of a person under 12, abuse of a person in a custodial relationship with the defendant, and abuse resulting in bodily injury. The Guidelines thus provide these enhancements as punishment mechanisms distinct from the underlying offense. Therefore, the enhancement for victims under 12 years of age, § 2A3.1(b)(2), does not constitute double counting.

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.

---

**5.** This refers to the 1988 Sentencing Guidelines, which the trial court properly utilized because they were in effect when the instant offense occurred.