# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-60721
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MIKE JOHN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Southern District of Mississippi

_____

October 7, 2002

Before SMITH and BENAVIDES, Circuit
Judges, and ENGELHARDT,[*] District
Judge.

JERRY E. SMITH, Circuit Judge:

Mike John, Jr., appeals his conviction on
two counts of sexual contact with a minor un-

_____

[*] District Judge of the Eastern District of
Louisiana, sitting by designation.

der the age of twelve. Concluding that the dis-
trict court committed reversible error by failing
to instruct the jury that it could consider
evidence of John's good character, we reverse
and remand.

I.

John, a Choctaw Indian, was alleged to
have engaged in sexual contact with his elev-
en-year-old female foster child on the Choctaw
Indian Reservation. 18 U.S.C. § 1153, 18
U.S.C. § 2244(a)(1). After a one-day trial, a
jury convicted John of both counts. He was

sentenced to thirty-seven months' imprisonment and three years' supervised release.

The child testified that John made sexual contact with her on two occasions. The first alleged incident occurred while she was washing dishes; she testified that John came up from behind her and placed his hand on her right breast; he moved away when she told him she would tell his wife Geraldine. The second incident occurred approximately two weeks later, when the child was alone in her room. John allegedly entered the room, pushed her onto the bed, and touched the frontal area between her legs on top of her clothing. He left the bedroom when his daughter, Sara Lynn, called the child's name from an adjoining room. No third person witnessed either incident.

John denied that the incidents occurred. His defense strategy was twofold. He claimed the child fabricated both incidents as a way of obtaining release from the foster home because she thought she was assigned a disproportionate share of household chores. One of her friends testified she had overheard a conversation in which the complainant and another friend discussed framing John so that she would be removed from the home.

John introduced several witnesses who testified to his good character. Although the court permitted the introduction of this evidence, it denied John's request for a jury instruction regarding character.

## II.

John argues that he was improperly sentenced as a felon. The indictment charged a violation of § 2244(a)(1), which makes it a felony, punishable by ten years' imprisonment,

to engage in "sexual contact" with another person if in doing so it would violate § 2241 "had the sexual contact been a sexual act."[1] John argues that the phrase "had the sexual contact been a sexual act" requires that the government prove a sexual *act*, not merely sexual *contact*. John contends that because he was alleged to have engaged in only sexual *contact*, he should have been sentenced for violating § 2244(b), a misdemeanor.[2]

### A.

Chapter 109A of title 18, entitled "Sexual Abuse," which encompasses 18 U.S.C. §§ 2241-2248, differentiates between a sexual act and sexual contact. Section 2246(2) defines a sexual act, in part, as "the intentional

---

[1] Section 2244(a)(1), entitled "abusive sexual contact," states:

(a) Sexual conduct in circumstances where sexual acts are punished by this chapter.§§ Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in or causes sexual contact with or by another person, if so to do would violate§§

(1) section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both[.]

[2] Section 2244(b) states:

(b) In other circumstances.§§Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than six months, or both.

2

touching, not through the clothing, of the genitalia of another person." On the other hand, sexual contact is defined as "intentional touching, either directly or through the clothing" of areas including the genitalia and breasts. It is undisputed§§indeed the indictment only alleged§§that both incidents qualified as "sexual contacts," because the child was touched through the clothing, not directly.

As we have said, § 2244(a)(1), under which John was indicted, prohibits sexual contact in violation of § 2241 "had the sexual contact been a sexual act." Section 2241, the subsection cross-referenced by § 2244(a)(1), is entitled "aggravated sexual abuse" and generally prohibits sexual acts by aggravated means. Specifically, § 2241(c) punishes defendants who engage in sexual acts with minors under twelve years of age.

Section 2244(a)(1)'s use of the phrase "had the sexual contact been a sexual act" apparently was intended to incorporate § 2241 in its entirety, with the caveat that § 2241's use of the term "sexual act" be replaced by "sexual contact." In other words, the plain text of § 2244(a)(1) prohibits sexual contacts "had the sexual contact" at issue "been a sexual act" as described in § 2241. Therefore, § 2241(c), which prohibits sexual acts with minors under twelve, is incorporated by § 2244(a)(1) to punish sexual contact with minors under twelve.

We do not see how the plain text can be interpreted any other way. In light of the fact that § 2244 is entitled "abusive sexual contact," it would make little sense if the government were required to prove a sexual act to convict under § 2244(a)(1).

B.

We are mindful that this interpretation results in two avenues for punishing the same conduct.[3] In addition to § 2244(a)(1), § 2244-(b), in concert with § 2244(c),[4] punishes sexual contact with minors under twelve years of age. Notably, a violation of § 2244(a)(1) qualifies as a felony, while a violation of § 2244(b) qualifies only as a misdemeanor. The fact that two provisions of § 2244 provide different penalties for punishing the same conduct does not, however, create ambiguity.

Although the rule of lenity requires that ambiguous statutes be construed in favor of criminal defendants, *United States v. Reedy*, ___ F.2d ___, ___ & n.13, 2002 U.S. App. LEXIS 17668, at *20 & n.13 (5th Cir. Aug. 26, 2002), the rule applies "only when, after construing traditional canons of statutory construction, [a court] is left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994). The rule of lenity does not apply in a case such as this, where two statutes provide different penalties for the same conduct. *United States v. Batchelder*, 442 U.S. 114, 121-22 (1979). If the government

---

[3] This oddity could mean that Congress intended § 2244(a)(1) to incorporate § 2241(a) and (b), but not (c). Yet, the plain text of § 2244(a)(1), which incorporates § 2241 in its entirety, suggests otherwise.

[4] Section 2244(c) provides that "[i]f the sexual contact that violates this section is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section." Presumably, this permits one who violates § 2244(b) by engaging in sexual contact with a minor under twelve years of age to be punished for not more than one year, instead of for only six months.

does not attempt to punish a defendant for the same conduct under both § 2244(a)(1) and § 2244(b), it "has the discretion to prosecute under either statute regardless of whether one allows a harsher sentence." *United States v. Thrasher*, 569 F.2d 894, 895 (5th Cir. 1978).[5]

### III.

The district court committed reversible error in refusing John's request for a character instruction. Unlike the situation in cases in which we have found a character instruction unnecessary, character was a vital part of John's theory of defense. Without any witnesses or other corroborating evidence supporting the child's accusations, guilt hinged entirely on credibility.[6] Given these circumstances and the closeness of the case,[7]

---

[5] In addition, a principle of statutory construction provides that a specific provision takes precedence over a more general one. *United States v. Torres-Echavarria*, 129 F.3d 692, 699 (2d Cir. 1997) (citation omitted). Section 2244(a)-(1) punishes sexual contacts with minors under twelve years of age through its incorporation of § 2241(c). Section 2244(b), the statute urged by John, generally prohibits sexual contacts regardless of age. Therefore, § 2244(a)(1) is the more specific provision and would control if we were forced to choose between the two provisions.

[6] Indeed, the fact that sex offenses are often unwitnessed and unsupported by evidence outside the victim's testimony means that they become "unresolvable swearing matches." *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (citing 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)).

[7] The jury deliberated for approximately 2 hours and 15 minutes before reaching a verdict. After about 1 hour and 45 minutes of deliberation, the
(continued...)

the court should have given a character instruction.

The proposed instruction would have informed the jury it should consider evidence of "good general reputation for truth and veracity, or honesty and integrity, or [being a] law abiding-citizen." More importantly, the instruction would have informed the jury that character evidence "may give rise to a reasonable doubt, since you may think it improbable that a person of good character in respect to those traits would commit such a crime." The court apparently rejected the character instruction because it thought that John's only proffered character evidence was the testimony of Sara Lynn John, and that her testimony alone was insufficient to warrant the instruction.[8]

### A.

A character instruction is warranted only if the defendant first introduces admissible char-

---

[7](...continued)
court had given an "*Allen* charge," *see, e.g., United States v. McClatchy*, 249 F.3d 348, 358-59 (5th Cir.), *cert. denied*, 122 S. Ct. 217 (2001), instructing the respective jurors to reconsider their positions in light of the body's inability to reach a unanimous decision. This was a close case; at one point, the prosecutor remarked that there was a "relatively small quantum of proof" linking John to the crime.

[8] The court, by referring to character evidence as "reputation" evidence and stating that Sara Lynn John's testimony was the only "reputation" evidence adduced at trial, overlooked the fact that character evidence also may be proven by a witness's opinion of the defendant. FED. R. EVID. 405(a). As we will discuss, several witnesses testified to their opinion of John without mentioning his reputation in the community.

acter evidence. *See United States v. Tanne-hill*, 49 F.3d 1049, 1057-58 (5th Cir. 1995). An accused may offer evidence of a pertinent character trait to prove action in conformity with that trait. FED R. EVID. 404(a)(1). In the criminal context, a pertinent character trait is one that is relevant to the offense charged. *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. Unit A Jan. 1981). Where admissible, proof of character may be made by testimony as to the defendant's reputation or by testimony in the form of an opinion. FED. R. EVID. 405.

John offered a host of admissible character evidence. Geraldine John, his wife, testified that she and John had a good marriage and a normal sexual relationship. Marion Wesley, a social service worker, testified that she knew the Johns, had placed eight foster children with them, and considered them to be "very good parents [who were] willing to do whatever needs to be done for the children." John testified that he was fifty-one years old and had never been accused of sexual misconduct.[9] Finally, Sara Lynn John, John's thirty-three-year-old daughter, testified that John had a "good" reputation for sexual morality and decency in the community.[10]

───────────────

[9] We have located no authority stating that a defendant's own testimony cannot be considered character evidence within the meaning of rule 404-(a)(1). Instead, at least one court has concluded that it can. *See United States v. Daily*, 921 F.2d 994, 1010-11 (10th Cir. 1991) (considering the defendant's own testimony as character evidence).

[10] A language barrier apparently prevented Sara Lynn John from initially comprehending defense counsel's questions regarding John's reputation for sexual morality and decency. After being asked three times whether she had heard people in the
(continued...)

This character evidence, if believed, might have swayed the jury that John was incapable of engaging in sexual contact with his foster child. The fact that this testimony was given in the form of personal opinion, rather than John's reputation in the community, does not defeat its admissibility.

B.

A defendant may introduce character testimony to show that "the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." *Michelson v. United States*, 335 U.S. 469, 476 (1948). Unlike an affirmative defense, character evidence is never legally sufficient to render a defendant not guilty. Standing alone, however, character evidence may create a reasonable doubt regarding guilt. *Edgington*

───────────────

[10](...continued)
community discussing John's reputation for sexual morality and decency, Sara Lynn John responded "yes." When asked whether John was a "good man or a bad man," she responded "good."

The government argues that her acknowledgement on cross-examination that she gathered John's reputation only from the opinions of persons connected to the case, and only after the complainant's allegations were raised, defeats its admissibility. We disagree, noting that rule 405(a) imposes no requirement beyond the limitation that reputation be limited to the community in which one resides. "The defendant may introduce evidence of his reputation . . ., and such a witness not only may but must base his testimony upon hearsay, in effect summarizing what he has heard in the community." *United States v. Duke*, 492 F.2d 693, 695 (5th Cir. 1974). We know of no authority suggesting that a "community" cannot be made up, in whole or in part, of persons interested in the case.

*v. United States*, 164 U.S. 361, 366 (1896). "In some circumstances, evidence of good character may of itself create a reasonable doubt as to guilt, and the jury must be appropriately instructed." *Hewitt*, 634 F.2d at 278 (citations omitted).[11]

We review for abuse of discretion the refusal to give a defense-tendered instruction. *United States v. Correa-Ventura*, 6 F.3d 1070, 1076 (5th Cir. 1993). A court commits reversible error where (1) the requested instruction is substantially correct; (2) the requested issue is not substantially covered in the charge; and (3) the instruction "concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. Unit A May 1981).

The government does not argue that the instruction is an improper statement of the law or that the issue of character was otherwise covered in the instructions.[12] We are left to determine whether the omission of the character instruction "impaired the defendant's ability to present" his defense of good character.

### C.

A defendant "is usually entitled to have the court instruct the jury on the defense's 'theory of the case.'" *United States v. Robinson*, 700 F.2d 205, 211 (5th Cir. 1983) (internal citation omitted).[13] Importantly, in cases where we have determined that the lack of a character instruction did not impair the defendant's ability to present his defense, character was not his main theory of defense.[14]

---

[11] The importance of character evidence is further demonstrated by the fact that on at least two occasions, we have reversed convictions after the district court had instructed the jury that character evidence "should not constitute an excuse to acquit the defendant if you, the jury, after weighing all of the evidence in the case, is convinced beyond a reasonable doubt that he defendant is guilty of the offenses charged in the indictment." *United States v. Leigh*, 513 F.2d 784, 785 (5th Cir. 1975); *accord United States v. Harris*, 533 F.2d 306, 307 (5th Cir. 1976). "Seizing on this sentence, the jury could easily have formed the impression that reputation evidence could only be used to tip the scales in defendant's favor if the case was otherwise close; this is precisely the contention rejected by the Supreme Court in *Edgington* . . . ." 513 F.2d at 786.

[12] At no point did the court address the issue of character. *See Daily*, 921 F.2d at 1010 (finding that a jury instruction failing specifically to mention character "cannot be reasonably construed as addressing the issue" of character). The court told the jury that in determining the facts of the case, it should consider "only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits." The court also told the jury, however, that in weighing the testimony of witnesses, it should consider the witness's relationship with the defendant. Without the benefit of being told that character evidence could raise a reasonable doubt as to the defendant's guilt, the jury might have inferred that it should disregard character evidence, in light of the fact that it was elicited mainly from witnesses close to John.

[13] At least the Tenth Circuit has recognized that a defendant is ordinarily "entitled" to a character instruction if he affirmatively makes character an issue and presents evidence of traits relevant to the charged offense. *Daily*, 921 F.2d at 1010.

[14] *See Oertle v. United States*, 370 F.2d 719, 727 (10th Cir. 1967) ("It is important in this case that the [defendants], for their defense, did not rely solely on good character evidence; such evidence
(continued...)

6

For instance, in *United States v. Baytank (Houston), Inc.*, 934 F.2d 599 (5th Cir. 1991), in holding that a character instruction was unnecessary where a defendant company accused of violating environmental regulations offered character evidence, we stressed that it did "not appear that character evidence was central or crucial."[15]  *Id.* at 614.  Similarly, in *United States v. Hunt*, 794 F.2d 1095 (5th Cir. 1986), we found a character instruction unnecessary where the defendant was convicted of mail fraud.  In that case, the defendant argued good faith as his main theory of defense and did not deny that he had solicited customers through mail, but contended only that he lacked the specific intent to defraud.[16]  *Id.*

By contrast, John's theory of defense was that he did not commit the act at all.  Character was necessarily a vital part of that defense, along with the credibility of the victim.  Without corroborating evidence or an eyewitness, the case boiled down to a "swearing-match" between the victim and the accused.  Indeed, defense counsel argued, in his opening statement and closing argument, that John's character made it unlikely that he would have engaged in sexual contact with his foster child.

The fact that character evidence may create a reasonable doubt as to guilt, *Edgington*, 164 U.S. at 366, is most compelling in cases such as this, where the only evidence linking the defendant to the crime is the victim's word.  Therefore, under these narrow circumstances, the court's treatment of character as a non-issue was tantamount to impairing John's ability to present his defense.  *Grissom*, 645 F.2d at 464.  Given the closeness of the case, had the jury been told that character evidence might create a reasonable doubt as to guilt, the outcome may well have been different.

IV.

Although we reverse John's conviction, we also address his contention that the district court engaged in prohibitive "double-counting" when it sentenced him.[17]  John was sentenced pursuant to U.S.S.G. § 2A3.4(a), which applies only to offenses committed in violation of § 2244(a)(1),(2),(3).  U.S. SENTENCING GUIDELINES MANUAL § 2A3.4 cmt. statutory provisions (2001).  After assigning John a base offense level of 10 under § 2A3.4(a)(3),[18] the court imposed a six-level

---

[14](...continued) was, in fact, only incidental to the prime defenses.").

[15] In *Baytank*, 934 F.2d at 614 n.26, we also called into question whether a corporate or institutional defendant is even entitled to present character evidence.

[16] In *United States v. Lamp*, 779 F.2d 1088 (5th Cir. 1986), we merely found that the court was entitled to conclude that the proffered character witnesses were insufficiently acquainted with the defendant to render character testimony.

[17]  The sentencing guidelines should be interpreted in a way that does not result in cumulative punishment for the same conduct. *United States v. Lamere*, 980 F.2d 506, 516-17 (8th Cir. 1992).

[18] Under § 2A3.4, a base offense level of 16 is assigned to § 2244(a)(1) so far as it covers offenses "committed by the means set forth in 18 U.S.C. § 2241(a) or (b) [but not (c)]."  U.S. SENTENCING GUIDELINES MANUAL § 2A3.4(a)(1) (2001).  A base offense level of 12 is assigned to § 2244(a)-(2), which incorporates crimes committed "by the means set forth in 18 U.S.C. § 2242."  *Id.* § 2A3.4(a)(2).  All remaining offenses, which include only § 2244(a)(3) and § 2244(a)(1) so far as (continued...)

7

enhancement pursuant to § 2A3.4(b)(1) because the victim had not attained the age of twelve.

John contends that age was factored twice in the overall calculation of base offense level 16——once in the calculation of base offense level 10, and subsequently in the six-level enhancement. Because the enhancement undoubtedly was based on the victim's age, we must decide whether the guideline's drafters factored age in calculating base offense level 10.

Two observations, viewed in tandem, compel the conclusion that the court engaged in prohibited double-counting. First, as we have discussed, John's violation of § 2244(a)(1) required that the age of the victim be under twelve. In other words, age is an element of § 2244(a)(1). Second, by process of elimination, there are only two offenses covered by § 2A3.4 that are assigned a base offense level of 10: § 2244(a)(1) insofar as it incorporates § 2241(c), and § 2244(a)(3).

John was convicted of violating § 2244-(a)(1). The other offense covered by § 2A3.4, which is § 2244(a)(3), punishes sexual contact with child-victims between the ages of twelve and sixteen. Bearing in mind that age is an element of both § 2244(a)(1) and § 2244(a)(3), the sentencing guidelines commentary specifically exempts *only* § 2244(a)(3) from an age enhancement: "The [age] enhancement under subsection (b)(2) does not apply . . . where the base offense level is determined under subsection (a)(3) because an element of the offense to which that offense level applies

is that the victim had attained the age of twelve years but had not attained the age of sixteen years." *Id.* cmt. background.

It cannot be that age was factored into the computation of base offense level 10 as applied to § 2244(a)(3) but not to § 2244(a)(1).[19] Although the commentary does not explicitly state that § 2244(a)(1) is exempt from an age enhancement,[20] the commentary does not control our interpretation of the sentencing guidelines where it is plainly erroneous or otherwise inconsistent with the guidelines. *United States v. Urias-Escobar*, 281 F.3d 165, 167 (5th Cir.), *cert. denied*, 122 S. Ct. 2377 (2002).

It would be inconsistent to find that age was factored into the computation of base level 10 when applied to § 2244(a)(3) but not to

---

[19] Other courts have used similar reasoning in determining that double-counting did *not* occur where a defendant received a sentence enhancement because of the age of the victim after being sentenced under U.S.S.G. § 2A3.1 for violating 18 U.S.C. § 2241(c), which criminalizes aggravated sexual assault. *E.g.*, *United States v. Wimberly*, 60 F.3d 281, 288 (7th Cir. 1995); *United States v. Balfany*, 965 F.2d 575, 584 (8th Cir. 1992). Key to the reasoning in these cases was the fact that § 2242, another offense covered under § 2A3.1, does not require that the victim be less than twelve years old, even though § 2241(c) does so require.

[20] One possible explanation for the lack of an age enhancement exemption for § 2244(a)(1) is that Congress did not foresee § 2244(a)(1)'s being used to prosecute defendants through § 2241(c). As discussed *supra* part II, we are bound by § 2244(a)(1)'s incorporation of § 2241 in its entirety and will not speculate as to whether Congress intended a meaning at odds with the plain text of § 2244(a)(1).

---

[18](...continued) it incorporates § 2241(c), are assigned a base offense level of 10. *Id.* § 2A3.4(a)(3).

§ 2244(a)(1). There is only one base offense level 10. The district court engaged in double-counting when it enhanced John's sentence because of the victim's age.

The judgment of conviction and sentence is REVERSED and REMANDED for further proceedings consistent with this opinion.