IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-20464

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JESUS ALEJANDRO OSORIO

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CR-89-7

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Jesus Alejandro Osorio was convicted of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. He appeals, urging that his conviction be vacated because: (1) the district court should not have permitted extrinsic evidence detailing a previous drug transaction; (2) the prosecutor asked questions in cross-examination of a defense witness that improperly assumed Osorio's guilt; and (3) the district court erred

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in refusing to provide a requested jury instruction regarding character evidence. Because we find no reversible error, we affirm his conviction.

## I. Factual Background

Jesus Alejandro Osorio was alleged to be one of two middlemen in a complicated sale of over five kilograms of cocaine from his co-defendants Juan Antonio Escobar ("Escobar"), Leon Baldomero DeLeon ("DeLeon"), and Leonardo Arcemio Garcia ("Garcia") to purchasers Sugentino Percel ("Percel"), Eric Vasquez ("Vasquez"), and German Arias ("Arias").[1]  Percel and Vasquez were tried with Osorio in a four-day jury trial in the Southern District of Texas, Houston Division, in November of 2006.

The Government alleged that the conspirators assembled in Houston, Texas, on February 21, 2006, to conduct an intricate, day-long narcotics transaction by which Escobar, DeLeon, and Garcia ("the sellers") sold thirty-five kilograms of cocaine to Percel, Vasquez, and Arias ("the purchasers"), who traveled to Houston from Boston and New York.  According to the Government's theory of the case, Osorio served as a broker of the deal because of his friendship with purchasers Percel and Vasquez, and stood to earn between $2,000 and $3,000 for his efforts.

The Government submitted evidence that the cocaine was transported from Mexico in the hidden compartment of a truck, and subsequently taken from a "stash house" to seller Escobar's home.  Escobar retrieved Hernandez and the purchasers to consummate the drug deal at his home, where the conspirators packaged the cocaine for transport.

Later that evening, Escobar picked up Osorio, who had been at work during the day.  Escobar drove Osorio to Escobar's home, and they met with another conspirator.  After about fifteen minutes, Osorio and the other two

---

[1] The other middleman was co-defendant Bonifacio Hernandez ("Hernandez").

individuals returned to Osorio's apartment to retrieve a minivan, which was brought to Escobar's home and parked in the garage. While Osorio was in the "fairly small" home, the purchasers dismantled a panel in the van and placed ten bricks of cocaine in a hidden compartment behind the tail light. Twenty-five remaining packages were left in Escobar's home to be transported in another vehicle. The conspirators planned to return the van to Osorio's parking lot and drive the van and other vehicle back to New York or Boston.

A cooperating co-defendant accused Osorio of brokering the transaction at his apartment on a previous day. During that meeting, Osorio indicated to one of the sellers that he "had clients" (identified as Percel and Vasquez) willing to purchase twenty-five to thirty-five kilograms of cocaine. Throughout the deal, Osorio acted as a go-between, arranging the transaction so that the purchasers and the sellers did not have to communicate. According to the trial testimony, Osorio was not present for the daytime meetings between co-conspirators, the delivery of the cocaine to Escobar's home, or the packaging of the drug. However, he was in telephone contact with Escobar and Hernandez during the day and arrived at Escobar's home in order to "be there in case something happened." Osorio spent his time at Escobar's home on February 21 watching television with two conspirators and speaking with Escobar about topics including cocaine. It was planned that Osorio would return to Escobar's home with an Audi so that the conspirators could load and transport the remaining twenty-five kilograms of cocaine. Osorio was to be paid $2,000 to $3,000 for brokering the drug deal.[2]

Before Osorio could return the minivan to his apartment or retrieve the Audi, the DEA conducted a traffic stop and discovered the ten kilograms of cocaine hidden in the vehicle's paneling. Osorio consented to a search of his

---

[2] Osorio's defense was essentially that he was an innocent bystander and had been at work while his co-defendants engaged in the criminal conduct.

3

apartment, where the officers found industrial-sized green Saran Wrap and vacuum sealed bags that were identical to the wrapping found on the ten kilograms of cocaine recovered from the van. The officers also found a small scale and some bags with cocaine residue on them. At Escobar's home and an alleged "stash house," the officers recovered numerous items consistent with a drug trafficking conspiracy which corroborated the testimony of the cooperating co-defendants, including thirty-three kilograms of cocaine, significant amounts of drug distribution paraphernalia, cash, a firearm, and green cellophane of the same brand found in Osorio's apartment. In all, law enforcement officers recovered forty-three kilograms of cocaine, which had an estimated street value of $4.3 million and a wholesale value of over $1 million.

On February 23, 2006, all eight defendants were charged by complaint with conspiring to possess with intent to distribute cocaine, and an indictment was returned by a federal grand jury on March 21, 2006. The jury found Osorio, Percel, and Vasquez guilty of both counts of the indictment, and Osorio was sentenced to 151 months' imprisonment.

## II. Analysis

### A. Admission of Extrinsic Acts Evidence

The district court permitted the admission of testimony of a similar cocaine transaction that had occurred in December 2005 or January 2006. Co-defendant Arias stated that on that occasion, he drove from New York to Houston in a rented van and was picked up by middleman Hernandez, who brought him to Osorio's apartment. Percel and Vasquez were already there with fifteen kilograms of cocaine. Arias testified that he had not met Osorio prior to the transaction. The three purchasers packaged the thirty-three pounds of cocaine to be transported from Osorio's apartment to Boston. Osorio was present in the apartment, but watched television during the sixty to ninety minutes that his co-defendants were wrapping the cocaine and moving it from Osorio's

apartment to Arias's rented minivan. Arias did not testify that Osorio arranged this prior drug transaction, participated in it, or knew that it took place in his apartment. There was no evidence regarding the size of Osorio's apartment.

In permitting Arias's testimony, the district court applied the two-pronged test set forth in United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). The court held that the testimony was admissible as probative of Osorio's "intent, motive, opportunity, preparation, plan, knowledge, and absence of mistake or accident," and determined that a limiting instruction would alleviate any unfair prejudice. Defense counsel raised a number of objections, which were overruled. At the conclusion of Arias's testimony on direct examination, the district court provided a limiting instruction, informing the jury that it may only use the prior conduct to establish, "first, whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment or, second, whether the Defendant had a motive or the opportunity to commit the acts charged in the indictment or, third, whether the Defendant acted according to a plan or in preparation for commission of a crime or, fourth, whether the Defendant committed the act for which he is on trial by accident or mistake." The district court also provided a similar limiting instruction, adopted from the Fifth Circuit Pattern Jury Instructions, in its jury charge. Osorio contends that the admission of this extrinsic evidence constitutes reversible error.

We review a district court's admission of extrinsic acts evidence under Federal Rule of Evidence 404(b) with a heightened abuse-of-discretion standard. United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003).[3] "A district court abuses its discretion if it bases its decision on an error of law or a clearly

---

[3] Federal Rule of Evidence 404(b) provides in relevant part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

erroneous assessment of the evidence." United States v. Insaulgarat, 378 F.3d 456, 464 (5th Cir. 2004). Even if the district court abused its discretion, we do not reverse if the error was harmless. Id.

In evaluating the admission of extrinsic acts evidence, we apply the two-pronged test for 404(b) evidence set forth in Beechum, 582 F.3d at 911. First, the extrinsic evidence must be "relevant to an issue other than the defendant's character." Id. Second, the evidence must have probative value that is not substantially outweighed by undue prejudice and must otherwise be admissible under Federal Rule of Evidence 403. Id. We have repeatedly held, and Osorio acknowledges, that a prior drug transaction is relevant to intent in a drug conspiracy case. See, e.g., United States v. Pompa, 434 F.3d 800, 805 (5th Cir. 2005) ("In a drug-trafficking case, the issue of intent is always material."). However, Osorio argues that the evidence should have been barred as irrelevant because there was insufficient proof that he was an active participant in the prior drug transaction.

"In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689 (1988). Although a preliminary judicial finding under Rule 104(a) that the extrinsic act occurred is not required, relevancy does command the proponent of the 404(b) testimony to tender sufficient proof to permit a reasonable jury to find the existence of the conduct by a preponderance of evidence. Id. at 688-90; United States v. Anderson, 933 F.2d 1261, 1269 (5th Cir. 1991). The standard of proof of such preliminary facts is "relatively light." Anderson, 933 F.2d at 1269; see also United States v. Gonzalez-Lira, 936 F.2d 184, 189-90 (5th Cir. 1991) (The Government must "at least provide some evidence that the defendant committed the prior bad act.").

Certainly, Arias's testimony did not provide dispositive evidence that Osorio had brokered the prior drug deal. The sum of the extrinsic evidence was that in late December or early January of 2005, Osorio was present during the sixty to ninety minutes when four of his co-defendants (including a total stranger) packaged and removed thirty-three pounds of cocaine from his apartment. Although this is a close question, we do not find that the trial judge abused her discretion in determining that a reasonable jury could conclude that, more likely than not, Osorio committed the prior bad act. The jury is permitted to consider the totality of evidence and apply common sense. Here, the jury could have concluded that an individual is usually aware of, and involved in, a sixty to ninety minute transaction occurring in their own home, which included a total stranger, that results in the packaging and removal of thirty-three pounds of cocaine. When considered in light of DeLeon's testimony that Osorio took a largely passive role when he brokered the later narcotics deal from his home and the other evidence that Osorio's role in the conspiracy was as a broker between the sellers and out-of-town buyers, the connection between Osorio and the earlier transaction does not appear so weak as to bar a reasonable jury from concluding that, more likely than not, he committed the prior bad act. Accordingly, we find that the extrinsic evidence was sufficiently established and relevant to the issue of Osorio's knowledge and intent.

Although relevant, extrinsic acts evidence must nonetheless be excluded if its probative value is substantially outweighed by the danger of undue prejudice. Beechum, 582 F.2d at 911. The Beechum court explained,

> [T]he more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant. The likelihood that the jury will convict the defendant because he is the kind of person who commits this particular type of crime or because he was not punished for the extrinsic offense increases with the increasing likeness of the offenses.

Id. at 915 n.20.

Generally, probative value is determined by considering whether the defendant's unlawful intent is established by other, non-extrinsic evidence. Id. at 914-15. "Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily." Id. at 914. On the other hand, probative value is increased where little independent evidence exists to otherwise establish intent. Id.; United States v. LeBaron, 156 F.3d 621, 625 (5th Cir. 1998) ("The probative value is augmented if there is slight direct evidence.").

Little evidence existed to tie Osorio to the charged conspiracy independent of his co-conspirators' testimony, which was challenged as suspect. Indeed, Osorio's defense was that there was no direct evidence of his guilt, because he arrived at Escobar's residence after the cocaine had been packaged, spent his time in the house talking and watching television, and was not near the van other than when he got into and out of it. That his visiting co-defendants (including a complete stranger) were alleged to have conducted a lengthy transaction which resulted in the packaging and transport of over thirty pounds of cocaine from his apartment a few months earlier is probative of his participation in the conspiracy and would support the testimony of DeLeon, a cooperating defendant. Certainly, the extrinsic evidence was probative as to the role of each conspirator, the modus operandi of the conspiracy, the introduction of Arias into the conspiracy, and the intent of the two individuals standing trial with Osorio, both of whom actively participated in the earlier transaction.

As to prejudice, the district court provided a detailed limiting instruction to the jury after the receipt of evidence of the extrinsic acts, and then again in its charge to the jury. This court has repeatedly held that such a limiting instruction is sufficient to cure any impropriety in the admission of prior bad acts evidence. See, e.g., United States v. Willis, 6 F.3d 257, 262 (5th Cir. 1993)

(stating that "[t]he danger of unfair prejudice to [the defendant] was minimized by the district court's careful instructions to the jury, which made it clear that the prior convictions could not be considered unless and until the jury first found that [the defendant] had participated in the charged acts, and, even then, could be considered only for the purpose of determining whether [the defendant] had the state of mind or intent necessary to commit the crime . . ."), overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995). Indeed, in United States v. Gordon, 780 F.2d 1165, 1174 (5th Cir. 1986), this court observed that the issue of whether the district court abused its discretion in admitting extrinsic evidence need not be reached, because the trial judge provided a proper limiting instruction adopted from the Fifth Circuit's Pattern Jury Instructions.

B.    Cross Examination of Robert Bosley

In his defense, Osorio introduced the testimony of Robert Bosley, who worked with Osorio for ten to twelve years and had hired Osorio as an employee in early 2006. Bosley testified that his records indicated that Osorio was at work on February 21, 2006, that Osorio never exhibited suspect behavior or said anything suspicious regarding drugs, and it would not be unusual for Osorio to leave work later than 5:00 p.m. Although Osorio's counsel inquired whether Bosley had "gotten to know about his character and generally the kind of person Mr. Osorio is," Bosley provided no testimony regarding Osorio's character for truthfulness, law-abiding nature, or any other pertinent character trait.

During cross-examination, the following colloquy ensued:

Q. You indicated that, to a certain extent, you have a sort of familiarity with Mr. Osorio based on your working relationship. You talked about his character. Would it surprise you if you learned that the substance cocaine was found in his residence?

MR. NGUYEN [Counsel for Osorio]:    Objection, Judge. Whether the witness is surprised or not is not relevant to this case.

THE COURT:    Overruled.

BY MR. BURNS [Prosecutor]:
Q.    Would that surprise you, sir?

A.    It probably would.  Yes.

Q.    Would it be fair to say that the Osorio that you know would not be an individual that might have small quantities of cocaine at his residence?

A.    I don't believe he would.

Q.    And the Osorio that you know is not the type of individual that would have or be around large quantities of cocaine?

A.    I don't believe so.  No.

Q.    And if, in fact, the individual that you do know was found in those circumstances, it'd be fair to say that maybe you might not really know him?

A.    Possible.  Yes.  I know him as business and that's it.

Bosley provided no further testimony concerning Osorio's character. Osorio claims on appeal that the prosecutor's questions constitute error that was "gravely prejudicial," because they rested upon an assumption of his guilt.

A district court's decision to permit a certain line of cross-examination is typically reviewed for abuse of discretion.  United States v. Smith-Bowman, 76 F.3d 634, 636 (5th Cir. 1996) (citing United States v. Candelaria-Gonzalez, 547 F.2d 291, 294 (5th Cir. 1977)).  However, where the defendant fails to make a proper objection to comments or questions by a prosecutor, we apply plain error review.  See United States v. Burns, 526 F.3d 852, 858 (5th Cir. 2008).  Plain error exists if (1) there was error; (2) the error was clear and obvious; and (3) the error affected a substantial right.  United States v. Jimenez, 256 F.3d 330, 340 (5th Cir. 2001).  A finding of plain error is limited to those errors that "seriously affect[] the fairness, integrity or public reputation of judicial proceedings."  Id. (internal quotation marks omitted).  Osorio acknowledges that a plain error

10

standard applies, because his relevance objection was not sufficiently specific to challenge (as he does in the instant appeal) the questions as resting upon an assumption of guilt.

Under certain circumstances, a district court abuses its discretion when it permits on cross-examination questioning designed to elicit speculative responses that rest on an assumption of guilt. Candelaria-Gonzalez, 547 F.2d at 294. In Candelaria-Gonzalez, we found improper a prosecutor's hypothetical questions of character witnesses that required each witness to assume the conviction of the defendant for the offense charged. The government inquired of three witnesses whether the defendant's reputation would be affected if he were convicted of trafficking in narcotics. Id. at 293. Finding an abuse of discretion, we explained,

> The nature of the questions put to Ledesma's witnesses by government counsel, however, was a far cry from any concept of formulated community opinion. Rather, the questions posed sought speculative responses resting upon an assumption of guilt. Government counsel asked if Ledesma's reputation would be affected if he were convicted of the alleged crime. These hypothetical questions struck at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial. We think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have no place in a criminal trial.

Id. at 294 (citations omitted).

However, Candelaria-Gonzalez is distinguishable. There, character witnesses testified about the defendant's reputation for honesty in the community, and the prosecutor asked them whether Candelaria-Gonzalez's reputation would be affected if he were convicted of the alleged crime, thereby implicating the sacrosanct presumption of innocence. Id. In addition, the admission of the cross-examination questions in Candelaria-Gonzalez was reviewed under an abuse of discretion standard. Id.

Here, Osorio's defense was not based wholly on the credibility of character witnesses, and the prosecutor's questions concerned undisputed facts.[4] Although irrelevant, the prosecutor's four questions in cross-examination simply summed up the undisputed evidence that Osorio was around large quantities of cocaine, and a small amount of cocaine was recovered from his apartment. The inquiries did not assume Osorio's knowledge of the cocaine or intent to possess it. Bosley was asked only whether the undisputed evidence in the case was consistent with his knowledge of Osorio. He was never required to assume Osorio's guilt. Accordingly, the "grossly prejudicial" harm set forth in Candelaria-Gonzalez is absent.

This case is similar to United States v. Smith-Bowman, 76 F.3d at 636. There, the district court permitted the prosecutor to cross-examine a character witness concerning the defendant's use of a credit card, an allegation that she

---

[4] In fact, Osorio adopted these facts, stating in opening,

> And from his mere presence being in the van when they eventually uncovered the drugs in the van and in the panel – you will hear some testimony from DEA Agent Cornelius that it was welded in a panel in a minivan in the back, no odors, no detection, that any passenger sitting in the van would not know it was hid back there.

In closing, Osorio argued,

> We know that the plastic wrap and the seal bags, the one small scale, the two small Ziploc bags and the two sandwich-size Ziploc bags which had cocaine residue on them, the four bags and the scales – we know they were found at [Osorio's address].

> We also know from the evidence that the 10 packages found in the van were undetectable. They were hidden – well hidden behind the panel and you couldn't see them.

did not contest. Id.[5] Over the objection of defense counsel, the character witness was asked,

> Have you heard that this defendant took an American Red Cross credit card and went to the La Quinta Inn and rented a room in the name of Judy Walker so she could have a rendezvous with her boyfriend?
>
> Have you heard that this defendant took an American Red Cross credit card and bought jewelry for herself?

Id. Finding no error, the Smith-Bowman court distinguished Candelaria-Gonzalez, because the questions did not clearly assume the defendant's guilt for the charged offense, the allegations were uncontested, and her defense was not based wholly on the credibility of character witnesses. Id. at 636-37.

In any case, reversing the district court under plain error review would require us to find that the admission of such cross-examination was so egregious as to seriously affect the fairness, integrity or public reputation of judicial proceedings. Jimenez, 256 F.3d at 340. The testimony here, which boils down to a defense witness admitting that he would be surprised to learn that Osorio had small amounts of cocaine in his home and was "around large quantities of cocaine," does not reach that level of error, if any.

C.    Requested Jury Instruction

Finally, Osorio contends that the district court abused its discretion by refusing to provide the Fifth Circuit's Pattern Jury Instruction 1.09 on character evidence.[6] Osorio requested this instruction because of the questions submitted

---

[5] Although Smith-Bowman was charged with misusing that credit card in connection with her employment, she claimed that her use of the account was appropriate. Id. at 636.

[6] Fifth Circuit Pattern Jury Instruction 1.09 states,

> Where a defendant has offered evidence of good general reputation for truth and veracity, or honesty and integrity, or as a law-abiding citizen, you should consider such evidence along

to Bosley upon cross-examination; however, Bosley was not submitted as a character witness, Osorio's defense was concentrated on his absence from the drug transactions, and Osorio's character was not an essential part of his defense. The testimony of Bosley was raised merely by implication in Osorio's lengthy closing argument, and only then to suggest that Osorio was at work until late evening and could not have been involved in the drug transactions that occurred on February 21, 2006. Osorio did not argue to the jury that Bosley's testimony compelled the conclusion that Osorio was law-abiding and unlikely to have committed the offenses charged.

The denial of a requested jury instruction is reviewed for abuse of discretion. United States v. John, 309 F.3d 298, 304 (5th Cir. 2002). "A court commits reversible error where (1) the requested instruction is substantially correct; (2) the requested issue is not substantially covered in the charge; and (3) the instruction 'concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" Id. (quoting United States v. Grissom, 645 F.2d 461, 464 (5th Cir. Unit A May 1981)).

Osorio claims that the district court abused its discretion by failing to include his requested jury instruction. The government responds that a

---

with all the other evidence in the case.

Evidence of a defendant's reputation, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt, since you may think it improbable that a person of good character in respect to those traits would commit such a crime.

You will always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.09 (2001).

14

character instruction was not warranted, because Bosley was not a traditional "character witness," and provided no testimony about Osorio's law-abiding nature or character for truthfulness. Whether or not Bosley became a character witness because of his answers on cross-examination, the defendant did not offer the character evidence, and the omission of the jury charge did not impair Osorio's ability to effectively present a defense.

Our decision in United States v. John stands for the proposition that a district court can abuse its discretion if it refuses to give a requested character instruction on evidence where the defendant (not the prosecution) has raised good character as a central theme of defense. 309 F.3d at 304-05. We explained, "[i]n some circumstances, evidence of good character may of itself create a reasonable doubt as to guilt, and the jury must be appropriately instructed." Id. at 303-04 (quoting United States v. Hewitt, 634 F.2d 277, 278 (5th Cir. Unit A Jan. 1981)). There, the district court's treatment of character as a "non-issue" was "tantamount to impairing John's ability to present his defense," and we reversed and remanded. Id. at 305.

However, John does not sweep as broadly as Osorio suggests. First, the John court explained that a character instruction is warranted only if the defendant first introduces admissible character evidence. Id. at 303. More importantly, character was the central theory of the defense in John. Id. at 304. The court conspicuously distinguished Oertle v. United States, 370 F.2d 719, 727 (10th Cir. 1966), United States v. Baytank (Houston), Inc., 934 F.2d 599, 613-14 (5th Cir. 1991), and United States v. Hunt, 794 F.2d 1095, 1099 (5th Cir. 1986), noting that each stood for the proposition that a character instruction is not required where character is not "central" or "crucial" to the defense. John, 309 F.3d at 304-05; Baytank, 934 F.2d at 614.

Accordingly, the omission here of the requested jury instruction does not require reversal. Bosley provided no evidence as to any pertinent character

trait. He was clearly submitted as a fact witness. In opening, defense counsel explained Bosley's purpose, and his theory of the case:

> You will hear when the defense presents its case for Mr. Osorio that Mr. Osorio formerly owned a printing company here. He ran that printing company on his own and, after several years, merged with another printing company or got subsumed by a larger printing company. You will hear from Mr. Osorio's defense that Mr. Osorio has been working at that larger company, Outback Printing, as an employee for quite some time. And what's very important from the facts you'll hear is that, despite the surveillance having started in the early a.m. hours of February 22nd and all these places and all these names get involved – you will hear from the defense, uncontroverted, that Mr. Osorio was working from 8:00 o'clock that morning all the way until 7:00 o'clock, 7:30 that night.

Indeed, Osorio states in his initial brief that his defense was: (1) that he was at work and not present when the other individuals were at his apartment; (2) the items found at his apartment were equally consistent with his innocence; and (3) there was no physical evidence tying Osorio to the crime. Osorio provided no defense, and never argued, that his character for truthfulness, or his law-abiding nature, gave rise to a reasonable doubt regarding his guilt. In sum, whatever character evidence was elicited from Bosley, it was certainly not crucial to Osorio's defense. Accordingly, the district court's refusal to provide a character evidence instruction did not impair Osorio's defense, and it was not an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, Osorio's convictions are AFFIRMED.