**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 29, 2013

No. 12-40244

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN DE LEON, JR.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Juan De Leon, Jr. ("De Leon") was convicted on all counts of a five-count indictment that charged him with health-care fraud in connection with his durable medical equipment ("DME")[1] business. As part of his sentence, De Leon was ordered to pay a total of $750,000 in restitution to Medicare and Medicaid—the victims defrauded by the scheme. De Leon appeals his convictions, claiming that the district court erred in excluding some of the character evidence that he proffered. He also appeals the amount of restitution, claiming that the district court (1) erroneously included restitution attributable

---

[1] De Leon's DME business included the sale of powered wheelchairs ("PWCs"), scooters, diabetic testing supplies, and incontinence supplies.

No. 12-40244

to acts that occurred outside the dates of the specific conspiracy for which he was charged and convicted and (2) made "an unreasonable estimate or guess" in calculating the amount of actual loss. We affirm in part, and vacate and remand in part.

## I. FACTS AND PROCEEDINGS

### A. Indictment and Trial

De Leon was the owner, director, president, and treasurer of United DME, Inc., in Weslaco, Texas. The business provided DME to Medicare and Medicaid beneficiaries. According to the indictment, De Leon defrauded Medicare and Medicaid by billing for (1) DME prior to delivery to beneficiaries rather than after delivery, as required by applicable regulations; (2) new PWCs but delivering used PWCs or cheaper scooters; and (3) diabetes supplies that were never delivered. Count One charged that the conspiracy began in July 2008 and ended in April 2010, in violation of 18 U.S.C. § 1349. Counts Two through Four charged three specific fraudulent claims that violated 18 U.S.C. §§ 1347 and 2. Count Five charged aggravated identify theft, in violation of 18 U.S.C. § 1028A, in connection with Count Three. Named as a co-defendant and co-conspirator in Counts One through Four was David Villanueva ("Villanueva"), an employee of De Leon who delivered the PWCs or scooters.

In a three-day jury trial, the government presented ample evidence of De Leon's guilt, including testimony regarding his fraudulent billing practices, from investigators and former employees and from beneficiaries who did not receive new PWCs. Villanueva testified that he falsified delivery dates and receipt signatures, and that he delivered scooters instead of PWCs, all pursuant to De Leon's instructions. The government also presented a signed statement in which De Leon admitted that (1) he delivered a scooter, but billed for a PWC; (2) he billed for more diabetic and incontinence supplies than he actually delivered; (3) he knew "it was wrong to bill for a powered wheelchair and provide a scooter was

2

illegal [sic]"; and (4) he "wanted to make this right, by paying [M]edicare and [M]edicaid the money that [he] owe[d], because of [his] fraudulent claims to the programs."

De Leon did not testify at trial. After calling two government investigators involved in the case, De Leon's counsel called De Leon's mother as a character witness. She testified about De Leon's upbringing, his military service and awards, and his career. Then the following exchange occurred:

| | |
|---|---|
| Counsel: | Okay. And is he a law-abiding citizen? |
| Mother: | Yes. |
| Government: | Object, your Honor, this is improper 608(a)— |
| Court: | Correct. Sustained. |
| Counsel: | Can I get— |
| Court: | Sustained. That objection—608(a). |

De Leon's mother then testified that her son was "truthful and honest" and had never had problems with anyone.

Defense counsel then attempted to call another character witness and asked the district court: "Do we get to go into character, truthfulness and all those things?" The district court again cited Federal Rule of Evidence 608 and informed counsel he could "only ask, 'Are you familiar with the reputation?'" or "'Do you know him for being truthful?'" De Leon's counsel chose not to call the second witness and did not explain who he was or what his testimony might have been. The defense then rested.

In closing argument, De Leon's counsel attempted to blame Villanueva and offered innocent explanations of various claims alleged at trial to have been fraudulent. In particular, counsel argued that the absence of complaints from beneficiaries indicated that De Leon had no way of knowing that scooters were being delivered instead of PWCs. The district court instructed the jury to disregard any testimony or evidence to which objections had been sustained. The jury convicted De Leon on all counts.

No. 12-40244

## B.    Sentencing and Restitution

The United States Probation Office prepared a presentence investigation report ("PSR") on De Leon.  The PSR stated that Medicare and Medicaid had sustained actual losses of $1,161,737.58 and $1,783,440.46, respectively, reflecting their payments to De Leon between 2005 and 2011, for a total of $2,945,178.04.  The PSR recommended restitution in that amount.  The district court held a series of hearings on loss calculation for sentencing and restitution purposes.  At one of these hearings, the government submitted spreadsheets detailing the fraudulent claims that totaled $2,945,178.04.  De Leon objected to the restitution calculation, contending that not all of the claims he submitted to Medicare and Medicaid were fraudulent and offering a confusing calculation of actual loss totaling only $120,000.

At the final sentencing hearing, the district court stated that it had "spent hours reviewing the [government's] spreadsheets" and that, because it was "difficult, if not impossible, to ascertain with precision the actual loss," the court would "estimate" the loss.  It then stated that the loss totaled $750,000. When the probation officer remarked that Medicare and Medicaid were distinct victim entities, the court responded that "[t]he fraud was about equal to each so, yes, the Court will just divide it in half as to each."  The district court sentenced De Leon to 120 months' imprisonment and ordered him to pay $375,000 in restitution to each victim, for a total of $750,000. De Leon timely filed a notice of appeal.

## II.  ANALYSIS

### A.    Character Evidence

De Leon first asserts that the district court reversibly erred in excluding admissible character evidence pursuant to Rule 608(a).  He  contends that the district court should have admitted the evidence of his law-abiding character pursuant to Rule 404(a), and that its failure to do so prevented him from

4

No. 12-40244

demonstrating that he did not act with the requisite state of mind. As a result, he insists, his convictions should be reversed.

### 1.    Standard of Review

As a threshold matter, the parties dispute whether De Leon preserved for appeal the exclusion of his character evidence. The government claims that De Leon failed to preserve this claimed error, so that we should review it only for plain error.[2] De Leon responds that he asked a permissible question but the government "led the court down a legally erroneous path" by citing Rule 608, so the error should be treated as preserved. De Leon thus urges us to review the district court's evidentiary rulings for abuse of discretion, which is subject to harmless error analysis.[3]

### 2.    Analysis

The district court did err when it excluded De Leon's evidence of his law-abiding character. "[E]vidence of the defendant's pertinent trait" is admissible.[4] And evidence of the defendant's "character as a law-abiding citizen . . . is always relevant."[5] The evidence can take the form of a witness's opinion or testimony regarding the defendant's reputation.[6] Rule 608(a), which the district court cited in limiting testimony to De Leon's character for truthfulness, applies only to a *witness's* credibility.[7] As De Leon was not a witness, the district court erred when it sustained an objection to the question, "And is [De Leon] a law abiding

---

[2] *United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007).

[3] *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011).

[4] Fed. R. Evid. 404(a)(2)(A).

[5] *See United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. Unit A 1981); *see also United States v. John*, 309 F.3d 298, 302-03 (5th Cir. 2002).

[6] Fed. R. Evid. 405(a).

[7] *See United States v. Yarbrough*, 527 F.3d 1092, 1101 n.5 (10th Cir. 2008).

citizen?," and when it limited the second witness's testimony to the "very, very narrow" topic of De Leon's reputation for truthfulness. This error of law was an abuse of discretion.[8]

Even though the district court erred in excluding such evidence, however, we must "affirm[] the judgment unless the ruling affected a substantial right of the complaining party."[9] We "will not overturn a conviction based on the exclusion of evidence unless a reasonable probability exists that the error contributed to conviction."[10] Although De Leon cites several cases reversing convictions based on the exclusion of character evidence, none is factually similar. The defendant in *United States v. Hewitt* was charged with several counts of unlawful possession or receipt of firearms. We observed that "[i]n some circumstances, evidence of good character may of itself create a reasonable doubt as to guilt."[11] Then, without discussion of the specific prejudice to that defendant, we reversed his convictions.[12] Similarly, the defendant in *United States v. John* was charged with molesting a young girl, and the case "hinged entirely on credibility" because the government presented no "witnesses or other corroborating evidence supporting the child's accusations."[13] Although the trial court allowed the defendant's character evidence, it denied a defense-requested instruction that the jury consider such evidence, as it could give rise to

---

[8] *See Hewitt*, 634 F.2d at 279.

[9] *United States v. Tucker*, 345 F.3d 320, 326 (5th Cir. 2003) (internal quotation marks omitted).

[10] *United States v. Gulley*, 526 F.3d 809, 919 n.2 (5th Cir. 2008).

[11] 634 F.2d at 278.

[12] *See id.* at 280.

[13] 309 F.3d at 302.

reasonable doubt.[14]  Because the defendant's "main theory of defense" was his credibility, and the court's rejection of the defense-requested instruction denied him the benefit of his admissible character evidence, we reversed the conviction.[15]

De Leon also cites jurisprudence from other circuits.  One is *United States v. Yarbrough*, in which the defendant was a police officer accused of leaking information to a person who was the subject of an ongoing investigation.[16]  The defendant's actions were uncontroverted, but his mental state was "a sharply controverted question going to the heart" of his defense.  The Tenth Circuit reversed the conviction, concluding that exclusion of testimony regarding the defendant's character as a law-abiding police officer was prejudicial.[17]  Similarly, in *United States v. Angelini*, the defendant in a drug case disputed the prosecution's version of his statements at a crucial meeting.  The defense offered witnesses to his law-abiding character, but the district court excluded the character witnesses.[18]  The Second Circuit reversed, concluding that it "cannot say that the exclusion of this evidence was harmless error."[19]

These cases are not persuasive here.  True, part of De Leon's defense was that he did not know the PWCs were not being delivered and that he did not intend to commit fraud, so that evidence of his law-abiding character would tend to negate the required mens rea.[20]  But, this is not a case in which it was simply

---

[14] *See id.*

[15] *See id.* at 304-05.

[16] *See* 527 F.3d at 1095-96.

[17] *See id.* at 1102-03.

[18] *See* 678 F.2d 380, 381 (2d Cir. 1982).

[19] *See id.* at 382.

[20] *See Yarbrough*, 527 F.3d at 1102-03.

the defendant's word against the word of another, as in *John* and *Angelini*. The government presented overwhelming evidence of De Leon's knowing submission of fraudulent claims, including testimony from employees who he instructed to forge delivery receipts. And, as noted, the government introduced De Leon's signed statement in which he admitted that he had submitted fraudulent claims. In light of all that evidence, there is no meaningful probability that the jury would have acquitted De Leon, even if it had heard his mother and another unidentified individual testify that he was law-abiding. Although the district court erred in excluding that testimony, we are satisfied that the error was harmless,[21] and we affirm his convictions.

## B. Restitution

De Leon also contends that, even if we affirm his convictions, we should reverse the amount of restitution calculated by the district court. He insists that the court (1) erroneously awarded restitution for time outside the dates of the specific conspiracy for which he was charged and convicted and (2) made "an unreasonable estimate or guess" in calculating the amount of actual loss. He urges that the restitution order be vacated and this matter remanded for a correct calculation of the amount of actual loss.

### 1. Applicable Law and Standard of Review

The Mandatory Victim Restitution Act ("MVRA") requires a district court to award restitution to victims "directly and proximately harmed" by a

---

[21] We need not determine whether De Leon preserved this error for appeal because we find that his argument fails even under harmless error review, a less difficult standard to satisfy.

defendant's offense.[22]    But, the MVRA does not permit a court to award a windfall greater than the victim's actual loss.[23]

The government has the burden of proving a victim's actual losses.[24]  On occasion, however, we have shifted to the defendant the burden to show any entitlement to a credit for value bestowed on the victim.[25]  The trial court must resolve any disputes as to the amount of restitution based on a preponderance of the evidence.[26]  In addition, the sentencing court's "failure to give a reasoned analysis of how it arrived at its [restitution] award in a manner that allows for effective appellate review" may require vacating and remanding.[27]  That said, however, the court "need not make specific findings . . . if the record provides an adequate basis to support the restitution order."[28]

We review preserved error as to the quantum of a restitution award for abuse of discretion.[29]  Absent a party's objection in the district court, however, we review such an award for plain error.[30]  "This court has never applied a harmless error analysis to restitution" because "an order of restitution must be

---

[22] *See* 18 U.S.C. § 3663A(a)(1), (a)(2), (c)(1); *see also United States v. Arledge*, 553 F.3d 881, 898 (2008).

[23] *See United States v. Beydoun*, 469 F.3d 102, 107-08 (5th Cir. 2006).

[24] 18 U.S.C. § 3664(e).

[25] *See United States v. Sharma*, 703 F.3d 318, 325-26 (5th Cir. 2012) (collecting cases).

[26] 18 U.S.C. § 3664(e).

[27] *See United States v. Wright*, 639 F.3d 679, 686 (5th Cir. 2011), *rev'd on other grounds by In re Amy Unknown*, 701 F.3d 749 (5th Cir. 2012).

[28] *United States v. Blocker*, 104 F.3d 720, 737 (5th Cir. 1997).

[29] *See Sharma*, 703 F.3d at 322.

[30] *United States v. Maturin*, 488 F.3d 657, 660 (5th Cir. 2007).

limited to losses caused by the specific conduct underlying the offense of conviction."[31]

## 2.    Analysis

Restitution is limited to the loss actually caused by the offense of conviction, the time span of which is defined by the "*specific* temporal scope" of the indictment.[32] Thus, restitution cannot be awarded for "losses" attributable to conduct outside the temporal scope of the scheme charged; the same is true for conduct not charged as part of the scheme.[33]

In this case, the temporal scope of the conduct charged in the indictment was June or July 2008 through April 2010.[34] The conduct charged in Counts One through Four related only to (1) billing before delivery, (2) billing for new PWCs but delivering cheaper substitutes, and (3) billing for diabetes supplies that were not delivered. Despite that limited scope of the conspiracy's time span and conduct, however, the $2.9 million actual loss reported in the PSR included every dollar that Medicare and Medicaid paid to De Leon, on any and all claims, from 2005 through 2011. Payments to De Leon in 2005, 2006, 2007, and 2011, however, cannot be counted among the actual losses incurred by Medicare or Medicaid caused by the offense of conviction because he was not indicted for and convicted of conspiring during those years. Therefore, the PSR figure of $2,945,178.04 overstated Medicare's and Medicaid's payments—and thus

---

[31] *Arledge*, 553 F.3d at 899 (remanding because $54,000 of $5.8 million restitution order was not a loss to any victim).

[32] *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (emphasis in original); *United States v. Mason*, __ F.3d __, 2013 WL 3329033, at *2-3 (5th Cir. July 2, 2013).

[33] *See Sharma*, 703 F.3d at 323.

[34] The indictment charged that the conspiracy lasted from July 2008 through April 2010, but Count Two charged a fraudulent bill in June 2008.

overstated the maximum possible actual loss—by at least $1,334,421.29.[35] Regrettably, such errors in the PSR led the sentencing court to err in calculating the quantum of restitution.

The PSR's $2.9 million figure includes amounts De Leon billed outside the temporal scope of the charged conspiracy, so any restitution award based on the entire $2.9 million recommended in the PSR would have to be plainly erroneous.[36] Although the district court did not award the full $2.9 million as restitution because it deducted from the PSR's figure the amounts billed that were not fraudulent,[37] we find nothing in the record to suggest that the district court also excluded all sums paid to De Leon by Medicare and Medicaid for goods

---

[35] Medicare paid $247,835.14 in 2006; $334,931.57 in 2007; and $3,762.39 in 2011. Medicaid paid $56,993.72 in 2005; $164,361.22 in 2006; $290,670.63 in 2007; and $235,866.62 in 2011. The record is not clear as to the amounts Medicare and Medicaid paid on a month-by-month basis in 2008 and 2010. As the indictment charged De Leon with conspiring in some, but not all, of the years 2008 and 2010, payments made in January through May or June 2008, as well as those made in May through December 2010, are not deemed to have been caused by the offense of conviction. Such payments, therefore, cannot be counted as actual losses to Medicare or Medicaid for purposes of restitution from De Leon.

[36] *Inman*, 411 F.3d at 595; *Mason*, 2013 WL 3329033, at *2-3. The government contends that De Leon did not preserve his objection to the restitution amount, so review is only for plain error. Whether we review the restitution award for abuse of discretion or plain error is of no moment, because we repeatedly have found reversible error when a district court awarded restitution for conduct outside the temporal scope of the crimes charged in the indictment. *See Inman*, 411 F.3d at 595 (finding plain error and remanding for recalculation of restitution where the award included amounts for conduct outside the temporal scope of the crimes charged in the indictment); *Mason*, 2013 WL 3329033, at *2-3 (same).

[37] The district court stated it did not believe that every claim De Leon filed was fraudulent. That court also recognized that, if De Leon billed for DME before delivering it, but then actually delivered it, no financial loss would have been caused to Medicare or Medicaid merely by the early billing. That is, part of the conspiracy only resulted in early payment of valid claims, so that part of the fraud did not cause losses because Medicare and Medicaid would have paid such claims later. Thus, the district court understood that the "ceiling" of Medicaid and Medicare's total payments to De Leon would have to be reduced to reflect their actual losses.

No. 12-40244

sold and delivered outside the temporal scope of the charged conspiracy.[38] Thus, the district court plainly erred by relying on the PSR's overinclusive figure—an amount almost twice that which possibly could have been paid as a result of the fraud actually charged in the indictment—as the "ceiling" for determining Medicare's and Medicaid's actual losses. By calculating restitution on the basis of the PSR's exaggerated "ceiling," the district court indisputably awarded restitution for claims outside the scope of the charged conspiracy. As doing so is plain error, we must vacate the restitution reward and remand for recalculation.[39] And, because we do so, we need not address De Leon's contention that the district court further erred by failing to articulate its methodology for calculating the restitution amount.

We recognize that the district court devoted substantial time and effort to determining its $750,000 award, including the holding of three sentencing hearings and reviewing voluminous spreadsheets of billing records. And, regrettably, the district court's recalculation on remand is likely to be no less demanding or time consuming. We note, therefore, that this task does not fall solely to that court and the government: "Even though the MVRA puts the burden on the government to demonstrate the amount of a victim's loss, a sentencing court may shift 'the burden of demonstrating such other matters as the court deems appropriate . . . [to] the party designated by the court as justice requires.' "[40] Under similar circumstances, "we have approved the transfer of at least a portion of the burden to a defendant to establish his entitlement to a

---

[38] Citing to the record, the government contended—for the first time at oral argument—that the district court excluded the amounts outside the time frame of the conspiracy charged in the indictment. The portions of the record the government cites, however, in no way indicate that the district court excluded the amounts billed before June or July 2008 or after April 2010.

[39] *Inman*, 411 F.3d at 595; *Mason*, 2013 WL 3329033, at *2-3.

[40] *Sharma*, 703 F.3d at 325 (citing 18 U.S.C. § 3664(e)) (alterations in original).

restitution credit."[41]  Thus, the government—and De Leon, if the district court concludes that justice requires him to demonstrate the amount of credit he is due[42]—must assist the district court in calculating the correct amount of restitution.

### III.  CONCLUSION

We affirm De Leon's convictions, but we vacate the district court's order of restitution and remand for that court to recalculate the amount in a manner consistent with this opinion.

AFFIRMED IN PART, and VACATED IN PART and REMANDED with instructions.

---

[41] *Id.* (collecting cases).

[42] We remind De Leon that, although he might be entitled to credit for "any amount that the insurer would have paid had the defendant not committed the fraud," he is not entitled to credits for amounts billed or value received by beneficiaries for unnecessary or non-prescribed DME which Medicare or Medicaid would not have paid.  *Sharma*, 703 F.3d at 324-25; *see also United States v. Edet*,  2009 WL 552123, at *3 (5th Cir. Mar. 5, 2009) (affirming a restitution award that did not credit the value of wheelchairs actually provided to patients because the defendant did not offer any evidence that Medicare would have paid for the wheelchairs in the absence of the fraud).