# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No.  14-10513

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MELISSA MANDA HERRERA,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:13-CR-55-1

Before JONES and HAYNES, Circuit Judges, and CRONE, District Judge.*

PER CURIAM:*

Melissa Manda Herrera pled guilty, pursuant to a written plea agreement, to Count One of an indictment charging her with four counts of theft concerning programs receiving federal funds under 18 U.S.C. §§ 666(a)(1)(A) and 2.  The indictment alleged that Herrera, while working as an agent of the Red Creek Municipal Utility District ("District") in Tom Green County, Texas, knowingly embezzled or obtained by fraud "property of a value

---

* District Judge for the Eastern District of Texas, sitting by designation

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10513

of at least $5000 and owned by and under the care, custody, and control [of] the Red Creek Municipal Utility District, San Angelo, Texas." In her plea agreement, Herrera agreed that her sentence could include "restitution to victims or to the community, which may . . . include restitution arising from all relevant conduct . . . ." However, after reviewing the Pre-Sentence Report ("PSR"), Herrera objected to, among other things, the suggested restitution amount of $85,790.80. She argued that the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, did not permit restitution of three sums included in the restitution calculation. Over her objections, the district court adopted the findings in the PSR, including the entire suggested restitution amount.

On appeal Herrera contends that the district court's restitution order included three sums that are not recoverable as restitution under the MVRA: the amount representing losses to ACS, a third-party, the sum for the District's investigative audit costs, and the sum for unemployment benefits she claimed after her termination. For reasons stated herein, we AFFIRM the judgment of the district court.

## I. BACKGROUND

From approximately April 2003 through February 2012, Melissa Manda Herrera worked part-time as office manager and sole employee for the Red Creek Municipal Utility District in San Angelo, Texas. As office manager, Herrera was responsible for collecting all customer payments for "water sales, fees associated with installing new meters and transferring service, and various administrative fees." While she worked there, Herrera kept some customer payments for herself by failing to deposit all of the cash payments into the District's bank account. Herrera's theft was discovered after an annual audit in late 2011 revealed a discrepancy of approximately $10,000 between the District's bank balance and the accounting records. The auditor informed Herrera about the discrepancy and requested additional documents

No. 14-10513

to help complete the audit; Herrera claimed that the requested documents were no longer available. The auditor was able to receive the necessary information from Concho Rural Water Corporation ("CRWC"), the private company hired to manage the District's water distribution system and maintain customer billing records. The District placed Herrera on administrative leave, while Herrera continued to deny any wrongdoing. The District terminated Herrera's employment on February 28, 2012. The final investigative audit, completed after Herrera was fired, revealed a $9,857 discrepancy for the fiscal year ending September 30, 2011, and an $18,277 discrepancy for the fiscal year ending September 30, 2012.

After terminating Herrera, the District hired a CPA who referred the District to the Federal Bureau of Investigations ("FBI"). FBI Special Agent Broadway conducted an independent investigation of the District's financial records and determined that Herrera had stolen a total of $43,360.86 between October 1, 2007 and February 28, 2012. The FBI investigation also revealed that Herrera had fraudulently obtained a District credit card which she had been using for personal expenses. To pay the bills associated with her District credit card, Herrera had stolen funds from a different employer, Acme Contracting Services ("ACS"). While working with the District, Herrera also worked part-time as a bookkeeper with ACS until July 2012. To pay the bills for her District credit card, Herrera had issued ACS checks using her signature stamp, resulting in a total loss of $22,193.54 to ACS.

Herrera was charged with four counts of theft concerning programs receiving federal funds, and entered a plea agreement in which she pled guilty to Count One, theft concerning programs receiving federal funds, under 18 U.S.C. §§ 666(a)(1)(A) and 2. In the plea agreement, Herrera agreed that as part of her sentence the court could impose "restitution to victims *or to the community*, which may be mandatory under the law and which Herrera agrees

3

No. 14-10513

*may include restitution arising from all relevant conduct*, not limited to that arising from the offense of conviction alone."

The probation officer prepared a PSR suggesting restitution for disbursement to the victims of Herrera's embezzlement. Initially, he determined that Herrera's offense resulted in a loss of $65,554.40, comprising the District's direct loss ($43,360.86) and ACS's related loss ($22,193.54). The probation officer found that the District was entitled to an additional $4,131.40, the amount it had been required to pay to the Texas Workforce Commission ("TWC") for unemployment benefits Herrera fraudulently claimed by asserting wrongful termination from the District. In total, the PSR recommended $85,790.80 in restitution.

Herrera conceded liability for $43,360.86 to the District, but objected to the remaining balance of the suggested amount. She argued that the MVRA did not permit restitution to the District for $16,105 in investigative audit expenses, the $22,193.54 in losses to ACS, or the $4,131.40 paid to the TWC. In response, the probation officer explained that the three contested sums were properly included because Herrera's plea agreement permitted restitution for all relevant conduct not limited to loss arising from the offense of conviction alone. At sentencing, the district court adopted the findings in the PSR and imposed a top-of-the-Guidelines sentence of 21 months in prison, and a three-year term of supervised release. The district court ordered that Herrera pay restitution of $63,597.26 to the District and $22,193.54 to ACS. Herrera filed a timely notice of appeal.

## II. DISCUSSION

Herrera challenges the inclusion of the investigative audit costs, the losses to ACS, and the cost of her unemployment benefits claim in the court's restitution order.

No. 14-10513

"A federal court cannot order restitution except when authorized by statute." *United States v. Love*, 431 F.3d 477, 479 (5th Cir. 2005). The MVRA requires a sentencing court to order restitution for a victim's "actual loss directly and proximately caused by the defendant's offense[s] of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012); 18 U.S.C. § 3663A(a)(3). Under the MVRA "[r]estitution is limited to the loss actually caused by the offense of conviction, the time span of which is defined by the '*specific* temporal scope' of the indictment." *United States v. DeLeon*, 728 F.3d 500, 507 (5th Cir. 2013) (emphasis in original). The MVRA does not permit a court to award a windfall greater than the victim's actual loss. *Id.* at 506. However, ordering restitution to persons other than the victim of the offense is permissible "if agreed to by the parties in a plea agreement." 18 U.S.C § 3663A(a)(3).

The legality of a restitution award is reviewed de novo. *United States v. Espinoza*, 677 F.3d 730, 732 (5th Cir. 2012). When a restitution award is legally permissible, we review preserved error as to the quantum of the award for abuse of discretion. *Sharma*, 703 F.3d at 322. A court ordering restitution need not include a reasoned analysis of how it arrived at its award, so long as the record provides an adequate basis to support the restitution order in a manner that allows for effective appellate review. *DeLeon*, 728 F.3d at 507. With these rules in mind, we review each of Herrera's challenges.

**A. Restitution to ACS**

According to Herrera, including $22,193.54 lost by ACS is contrary to the MVRA because ACS was not a victim of her offense of conviction.[1] The MVRA

---

[1] Herrera also claims that the award to ACS is impermissible because, even though it arises from relevant conduct, she did not agree to pay restitution for losses arising from relevant conduct. Because Herrera's plea agreement explicitly encompasses "restitution arising from all relevant conduct," this argument is meritless.

requires defendants "to make full restitution for offenses in which an identifiable victim has suffered a pecuniary loss." *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006). "[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). However, "if agreed to by the parties in a plea agreement, [the court shall also order] restitution to persons other than the victim of the offense." 18 U.S.C. § 3663A(a)(3).

Regardless whether ACS was a "victim" of Herrera's offense of conviction, a defendant may enter a plea agreement to pay restitution beyond that which is required by the MVRA, and such an award to a non-victim may be proper. Herrera's plea agreement explicitly permits "restitution to victims or to the community, which may be mandatory under the law, and which Herrera agree[d] may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone."

Alternatively, Herrera contends that the restitution provision of her plea agreement is ambiguous and thus should be construed in her favor. This argument is clearly foreclosed by our precedent in *United States v. Miller*. 406 F.3d 323, 330 (5th Cir. 2005). Like Herrera, the defendant in *Miller* entered a plea agreement to pay restitution "arising from all relevant conduct, not limited to that arising from the offenses of conviction alone." 406 F.3d at 329. Miller contended this language was ambiguous. This court dismissed Miller's ambiguity argument, stating that "[d]espite Miller's protestations to the contrary, he did give his consent to the restitution." *Id*. at 330 (internal quotation omitted). To avoid any confusion on the subject, the court further noted that "[t]here is, however, no ambiguity. . . .[Miller] agreed that by pleading guilty he recognized that the maximum penalties that might be imposed on him included restitution for all relevant conduct." *Id*. *Miller* controls factually and legally and refutes Herrera's ambiguity argument.

No. 14-10513

## B. Investigative Audit Costs

Herrera also contests the inclusion of $16,105 for the District's investigative audit costs. This court has not specifically addressed whether investigative audit expenses are recoverable under the MVRA. Herrera presents three lines of argument on this point. We address each individually, but point out that even if investigative audit expenses did not fall within the ambit of the MVRA, Herrera's plea agreement clearly encompasses such costs as "arising from all relevant conduct, not limited to that arising from the offense of conviction alone."

Even absent a plea agreement, the MVRA appears to cover such costs as "other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." § 3663A(b)(4).[2] Herrera argues that the District's investigative audit expenses do not fall under this provision because the District incurred the costs before deciding to pursue criminal charges. We disagree.

The District's reliance on external auditing services was necessary in the wake of Herrera's fraud. Given that the District utilized a one-person office, and Herrera herself was the sole employee, the increase in audit and accounting costs was a direct and inevitable result of her crimes. Further, the investigative audit in this case was a fundamental component of the District's investigation of Herrera's criminal activity.[3] After discovering the discrepancy

---

[2] In a case that directly confronts the issue, the Seventh Circuit determined that restitution for investigation costs was proper because "[t]he bank's investigation was clearly an important part of 'the investigation . . . of the offense' [because it] led to the determination of the actual amount embezzled, and therefore the costs of that investigation may be included in the restitution award under § 3663A(b)(4)." *United States v. Hosking*, 567 F.3d 329, 332 (7th Cir. 2009) (internal citation omitted). *Hosking* is persuasive.

[3] For the same reasons, we are not persuaded by Herrera's characterization of these costs as "consequential damages."

No. 14-10513

from 2011, the District contacted the FBI and filed a police report naming Herrera as an embezzlement suspect. The District incurred $8,715 in additional audit fees for the 2011 audit, and $7,930 in additional audit fees for the 2012 audit. The purpose of the investigative audits, together totaling $16,105, was to ferret out the extent of Herrera's criminal activity. The District provided these audit reports to the Tom Green County Sheriff's Office and the FBI in furtherance of the investigation.

Herrera also contends that it was reversible error for the district court to adopt the PSR's "bald recital" of the auditing costs without supporting documentation to justify the amount of restitution ordered. A court is not required to make explicit findings or provide a detailed analysis so long as the record provides adequate basis to support the restitution order in a manner that allows for effective appellate review. *DeLeon*, 728 F.3d at 507. Here, the PSR provided the amounts for the District's routine audit expenses and compared that figure to the extraordinary audit expenses incurred to investigate the losses for 2011 and 2012. The restitution award constituted the difference. The duration and complexity of Herrera's fraud provide an adequate basis to support the district court's inclusion of these costs in the restitution order.

### C. Unemployment Insurance Costs

Herrera contests the inclusion of $4,130.40 restitution for unemployment benefits she received after her termination. Herrera asserts a variety of arguments on this point, but wholly fails to provide any legal analysis and cites no authority in support of her allegations. She merely asserts that inclusion was improper for "many of the same reasons already discussed," yet she provides no explanation of which reasons she refers to or how they apply to this particular claim. Thus, Herrera has abandoned her challenge to the award for the unemployment benefit expenses by inadequately

8

No. 14-10513

briefing the issue. *See United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) (finding that a party who "offer[s] only a bare listing of alleged [errors], without citing supporting authorities or references to the record" abandons those claims on appeal), *cert. denied*, 475 U.S. 1109 (1986).

Accordingly, we **AFFIRM** the district court's judgment of restitution.