JERRY E. SMITH, Circuit Judge,
dissenting:
In essence though not explicitly, the majority accuses Chief U.S. District Judge Ricardo Hinojosa of being “derelict” [1] in imposing a sentence that, in the majority’s view, apparently is so “particularly egregious” [2] that it undermines the integrity of the judicial system as an “injustice so grave as to warrant disregard of usual procedural rules.”[3] Chief Judge Hinojosa is the former Chair of the U.S. Sentencing Commission and is, quite probably, the *540 nation’s foremost expert on federal sentencing. The panel majority’s reversal— albeit with the best of intentions to avoid even the possibility of error — is unfair to him and misapplies the standards for plain-error review. I respectfully dissent.
The majority is mistaken in saying that Chief Judge Hinojosa erred when he ordered restitution for the whole temporal scope of the Mission Clinic fraud, which was outlined in the indictment and admitted to by Lozano. And even if the court did plainly err, we should decline to exercise our discretion to correct the error because Lozano has not shown how it seriously affected the fairness, integrity, or public reputation of judicial proceedings.
I.
The majority posits that the restitution order was flawed because the indictment and the factual proffer at the plea hearing included statements limiting the temporal scope of the fraudulent scheme. The indictment’s language, which is materially similar to that offered at the plea hearing, is as follows:
Beginning on or about April 30, 2005 and continuing on or about January 10, 2006, ... [the defendants] did conspire and agree together ... to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the health care benefit programs known as Medicare and Medicaid. '
The majority places too much emphasis on that statement and not enough on the other parts of the indictment.
Count Two incorporates by reference the first forty paragraphs, which lay out the specific details of the fraudulent scheme stretching back to 2001. And if that were not enough, the overt-acts section of Count Two incorporates specifics of those opening factual paragraphs, including some that covered fraudulent activities at the Mission Clinic going back to 2001. For example, paragraph 29 is incorporated into the overt-acts section and states that “from on or about September 20, 2001,” Lozano continued to operate the Mission Clinic unlawfully. Paragraph 30, likewise incorporated, describes the ' same time frame and states that Lozano “submitted claims, caused claims to be submitted, allowed ciaims to be submitted, and or aided and abetted in the submission of false and fraudulent claims to Medicare and or Medicaid .... ” The factual background has a section on the 2001-2006 Mission activities and a section on the 2005-2006 La Hacienda activities, and Count Two explicitly incorporates both sections.
Compare this case to United States v. De Leon, 728 F.3d 500 (5th Cir.2013). The defendant was convicted on a five-count indictment that charged only conduct from June 2008 through April 2010. Because “the temporal scope of the conduct charged in the indictment” was thus limited, the court erred in awarding restitution for payments the defendant, received in 2005, 2006, 2007, and 2011. Id. at 507. Unlike the indictment here, de Leon’s indictment included no facts from the contested time periods. That was a classic case of trying to expand beyond a plainly limited indictment; to the contrary is this case, in which we address only a claim that one general sentence implicitly repudiated a series of factual assertions that followed it.
We have never established a rule that a general statement about the time span of a scheme overrides the specific details of that scheme; quite to the contrary, the actions alleged in the indictment are our lodestar in navigating the murky waters of defining a fraudulent scheme. “Although we sometimes have struggled to define the outer bounds of a particular fraudulent *541 scheme, we have focused on the actions alleged in the indictment and their temporal scope.”[4] There is no dispute that Count Two specifically incorporated, as overt acts in furtherance of the conspiracy and the scheme, descriptions of fraudulent conduct stretching back to 2001. If we were referencing just the strict letter of the indictment, as we would if there were a guilty verdict, that would be enough to end the inquiry.
But there is a plea agreement, so we must define the fraudulent scheme by the mutual understanding of the parties. That can be difficult because the strict letter of the indictment might not define the scheme. “The essence of a plea agreement is that both the prosecution and the defense make .concessions to avoid potential losses.” Hughey v. United States, 495 U.S. 411, 421, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). One of those concessions may. be some limitation on the scope of the scheme, and such an understanding would not be memorialized in the indictment. See United States v. Adams, 363 F.3d 363, 367 (5th Cir.2004). Because of that possibility, we must not limit our definition of the scheme to the letter of the indictment but should look also to “any superseding indictments, plea agreements, and statements made by the parties during plea and sentencing hearings” to determine whether they reached a different understanding. Id. None of that, however, lends support to Lozano.
At the plea hearing, the government stated the agreement for Chief Judge Hi-nojosa:
There is a verbal agreement between the parties, your Honor. In exchange for Ms. Lozano’s plea of guilty to Count Two of the indictment the government will move to dismiss the remaining counts of the . superseding indictment along with the original indictment at the time of sentencing.
Lozano’s lawyer at the hearing confirmed the accuracy of that summary.
That plea agreement offers no support for an interpretation of the fraudulent scheme that is narrower than the one described by the indictment. If anything, it supports following the scheme as the indictment would define it. There is no indication that the plea negotiations resulted in an agreement to limit the temporal scope of the scheme; instead, what Lozano secured was the dismissal of twelve other counts.
Nor does the plea hearing help Lozano. Chief Judge Hinojosa had the prosecutor read Count Two aloud; Lozano expressly waived the reading of the incorporated introductory paragraphs and the overt acts.
THE COURT: So you are waiving the reading of paragraphs one through forty of this indictment even though they are referred to in Count Number Two, as well as the overt acts; is that right, with regards to Count Number Two?
[LOZANO]: That is correct, sir.
*542 THE COURT: But you’ve read them before and you’re familiar with them?
[LOZANO]: I have.
It is hard to understand that exchange as anything other than Chief Judge Hinojo-sa’s diligently ensuring that Lozano understood that those paragraphs and the facts within them were part of the count of conviction.
The sentencing hearing provides still further support for a mutual understanding that reached back to 2001. A defendant’s failure to object “in the district court to the characterization of the scheme or restitution amount[ ] further demonstrates] the parties’ mutual understanding.” Cothran, 302 F.3d at 290. The presentence report’s calculation of the restitution award included pre-2005 fraudulent billings, and Lozano did not object in writing or at sentencing. And instead of proceeding as though the fraudulent scheme began in 2005, Lozano’s lawyer stated at sentencing .that Lozano had benefited from the scheme for five years. If any aspect of the sentencing reflects a mutual understanding of the parties that the scheme begin in 2005, I have not found it.
In the end, we are faced with (1) an indictment specifically encompassing pre-2005 activity; (2) a plea hearing at which Lozano expressed her understanding that those sections of the indictment were part of her offense conduct; and (3) and a sentencing hearing at which no one objected to what should have been the elephant in the room. From all of this, it is easy to conclude that Chief Judge Hinojosa committed no error in his restitution order.
II.
Even if there were unobjected-to error, it would have to be plain or obvious to merit correction. Because the majority characterizes the factual proffer at the plea hearing as “unambiguously defining] the temporal scope of the offense of conviction,” it concludes that the error was plain.
Such a holding gives too little credit to Chief Judge Hinojosa, who carefully asked for and received Lozano’s assurance that she understood that the overt-acts section was part of Count Two. If the government, in opening its proffer by referencing the narrower timeframe specifically related to the La Hacienda clinic, intended to disclaim the factual background laid out in Count Two, Chief Judge Hinojosa heard no such indication.
Additionally, the majority’s disposition of the two issues is strikingly incongruent. According to the majority’s theory, there is sufficient evidence to show that the parties mutually understood the fraudulent scheme to include the Mission Clinic activities, or at least enough evidence that any error was not plain, but there is also enough evidence that the court plainly erred by including pre-2005 activities in the indictment. This is a hard pill to swallow when one considers that it was Mission Clinic that saw pre-2005 fraudulent activities, and there was nothing special about April 2005 for Mission Clinic. For the parties mutually to have understood the scheme to include Mission Clinic but not to reach before April 2005 would mean they arrived at an understanding that differed dramatically from the reality of the scheme and the details admitted as part of Count Two. Though it was within their ambit to come to such an agreement, Chief Judge Hinojosa did nothing reprehensible in failing to intuit this strange definition of the scheme without some indication from the parties.
III.
Even if there were plain error affecting *543 Lozano’s substantial rights,[5] we can exercise our discretion to grant relief only if the error “seriously affectfs] the fairness, integrity or public reputation of judicial proceedings.” United States v. Escalante-Reyes, 689 F.3d 415, 419 (5th Cir.2012) (en banc) (alteration in original) (quoting Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009)). Our discretion is not properly invoked just because the first three prongs of the plain-error test are met. Id. at 425. This is not the “rare” case that demands correction on plain error.[6] Lozano was given notice that her restitution would account for pre-2005 fraud, and she took no advantage of the opportunity to object. No one denies that she participated in the included fraud, and that is confirmed by her pleading guilty to Count Two.
The panel majority gives short shrift to the exercise of its discretion, pointing out only that this court has exercised its discretion in similar restitution cases and that the error here increased the award by over $80,000. Neither of these is a convincing reason for the rare exercise of discretion to grant plain-error relief.
We are not bound to correct one error on plain-error review just because we have done so before for the same type of error. That would run counter to the express instruction that the fourth prong “is meant to be applied on a case-specific and fact-intensive basis.” Puckett, 556 U.S. at 142, 129 S.Ct. 1423. Even if we identify a particular type of error that (unlike this one) generally calls into question the integrity of the system, individual cases may still have countervailing factors. Id. at 143, 129 S.Ct. 1423. Here we do not even have the sort of error that will generally work such a damaging effect to the judicial system (in easy contrast to Puckett, which concerned the government’s breaching a plea agreement).
Perhaps the majority means to say that we should exercise our discretion because it would seriously affect the fairness, integrity, and public reputation of judicial proceedings if similar errors were not treated identically on review; the notion might be that because we have repeatedly exercised our discretion in similar past cases, disparate treatment now might undermine the concepts of consistency and equal justice and thus might damage public confidence. Our discretion is strictly limited, however, to “exceptional circumstances”[7] in which “the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” Id. at 135, 129 S.Ct. 1423 (emphasis added) (internal quotation marks omitted). The fourth prong does not instruct us to examine whether the manner in which we correct errors affects the fairness or public reputation of judicial proceedings, which would be in serious tension with the requirement that we give personalized attention to the nitty-gritty of individual cases.
It is also not enough that the increase was $80,000. Justifying the exercise of discretion merely by citing the higher restitution collapses the fourth prong into the third. “[E]ven if an increase in a sentence be seen as inevitable ‘substantial’ in one sense it does not inevitably affect the fairness, integrity, or public reputation of judi *544 cial process and proceedings.” United States v. Ellis, 564 F.3d 370, 378-79 (5th Cir.2009). Assuming arguendo that the size of a sentence or restitution increase would be enough to satisfy the fourth prong, the inclusion of the pre-2005 fraud increased the award by only 27.7% — an unreasonably low bar for exercising our discretion.
We have no reason to exercise discretion to correct the error. Lozano had the knowledge and opportunity to object that would have allowed Chief Judge Hinojosa to consider this argument in the first instance, and Lozano was not wronged by a prosecutorial double-cross or other misconduct. Instead, she asks us to consider it, in the first instance, to help her escape restitution for her fraudulent conduct.
A relevant consideration for fairness is whether other record evidence' supports the punishment. See Escalante-Reyes, 689 F.3d at 425. Lozano’s guilty plea was made after Chief Judge Hinojosa diligently ensured that she understood the contents of the count to which she was pleading. It is highly unlikely that the judge’s error, even if he committed one, is sufficiently damaging to the judicial system that we must upset the distribution of responsibilities in the justice system.
Chief Judge Hinojosa committed no error when he defined the temporal scope of Lozano’s fraudulent scheme by the specifics of the indictment, supported by Loza-no’s other actions. Additionally, even if the judge erred, the mistake was not plain just because the sentence deviated from an unspoken understanding of the parties. And the fairness, integrity, and public reputation of judicial proceedings are not seriously called into question when a convicted felon, on account of her own poor performance in court, is called to account for wrongdoing she actually committed. '
The Supreme Court directs that relief for unobjected-to error should be extremely rare. The correct test should be something like this:
A district judge’s misbehavior in imposing an unchallenged sentence should entitle the defendant to resentencing only if reasonable adults, upon learning of the sentence, and knowing all the facts and circumstances, would walk down the street shaking their heads in despair, wondering what has become of our system of ordered liberty.
No one will despair because of this sentence. Lozano spent five years taking advantage of an ailing doctor to bilk the government of over $371,000, admitted to all the facts necessary to show her knowing engagement in the scheme, and was made to pay for the full five years because she neglected to tell the court that she and the government understood the scheme to stretch only one year.
I respectfully dissent.[8]

. United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

. United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

.United States v. Duarte-Juarez, 441 F.3d 336, 340 (5th Cir.2006) (per curiam) (citations omitted).

. United States v. Cothran, 302 F.3d 279, 289 (5th Cir.2002); see also United States v. Inman, 411 F.3d 591, 595 (5th Cir.2005) (holding that temporal scope of indictment is established by actions charged therein); United States v. Lee, 211 Fed.Appx. 322, 326 (5th Cir.2006) ("The temporal scope of the criminal behavior and the specific acts charged in the indictment define the parameters of the fraudulent scheme for purposes of determining restitution under the MVRA.”); United States v. O’Neal, 82 Fed.Appx. 980, 984 (5th Cir.2003) ("In order to determine which of a defendant’s actions are actions pursuant to a scheme of conduct, courts must focus on the actions alleged in the indictment and their temporal scope.”).

. There is no dispute that a restitution award $80,000 in excess of the maximum authorized by statute would affect substantial rights.

. See United States v. Dominguez Benitez, 542 U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

.United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

. See generally Escalante-Reyes, 689 F.3d at 431-49 (Smith, J., dissenting); Edward Goolsby, Comment, Why So Serious? Taking the Word "Seriously” More Seriously in Plain Error Review of Federal Sentencing Appeals, 51 Houston Law Review 1449 (2014).