# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-30309

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeramias Sandstrom,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:23-CR-97-1

---

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

　　Jeramias Sandstrom pled guilty to distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The district court ordered him to pay restitution to two victims. Sandstrom appeals those restitution awards, arguing that the district court failed to make necessary findings and inadequately explained why it ordered the amount of restitution it did. We disagree and AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30309

## FACTUAL AND PROCEDURAL BACKGROUND

Sandstrom was an airman at Barksdale Air Force Base in Louisiana. In June 2022, Air Force officials investigated him on suspicion of an unrelated offense.  During this investigation, Sandstrom consented to a search of his cell phone and admitted that he used a social media application, "Kik," to receive, view, and distribute child pornography.  A search of his cell phone revealed he was a member of multiple Kik groups that members used to obtain and exchange child pornography.  Sandstrom was a daily participant in these groups and regularly shared child pornography.  Far more than just a member, Sandstrom was an administrator, responsible for vetting prospective members and ensuring they were satisfied with their experience.

In April 2023, Sandstrom was indicted in the United States District Court for the Western District of Louisiana for distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A).  He pled guilty in November 2023.  As required by 18 U.S.C. § 2259, the district court ordered Sandstrom to pay restitution to two identifiable victims.  Specifically, Sandstrom was ordered to pay $6,000 to "Jenny" and $4,000 to "Maria."[1] Sandstrom timely appealed, challenging the validity of these awards on procedural and substantive grounds.  Sandstrom argues that the awards should be reduced either to the statutory minimum of $3,000, *see* 18 U.S.C. § 2259(b)(2)(B), or to the average amounts the victims have received in prior cases — $3,259.52 for Jenny and $3,803.21 for Maria.

## DISCUSSION

"We review a restitution order's legality *de novo* and its amount for abuse of discretion."  *United States v. Villalobos*, 879 F.3d 169, 171 (5th Cir.

---

[1] These are fictitious names used to protect the victims' identities.

2018).  The district court must "give a reasoned analysis of how it arrived at its [restitution] award in a manner that allows for effective appellate review," but "the court 'need not make specific findings . . . if the record provides an adequate basis to support the restitution order.'"  *United States v. DeLeon*, 728 F.3d 500, 507 (5th Cir. 2013) (alterations in original) (first quoting *United States v. Wright*, 639 F.3d 679, 686 (5th Cir. 2011), *rev'd en banc on other grounds sub nom. In re Amy Unknown*, 701 F.3d 749 (5th Cir. 2012), *vacated sub nom. Paroline v. United States*, 572 U.S. 434 (2014); and then quoting *United States v. Blocker*, 104 F.3d 720, 737 (5th Cir. 1997)).

In ordering restitution under Section 2259(b)(2), the district court should first "determine the full amount of the victim's losses" — *i.e.*, "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, . . . as a proximate result of all trafficking in child pornography offenses involving the same victim."  18 U.S.C. § 2259(b)(2)(A), (c)(2). Then, because there are often many criminals responsible for the harm suffered by a victim of child pornography, the district court should discount those losses to "reflect[] the defendant's relative role in the causal process that underlies the victim's losses."  § 2259(b)(2)(B).  In determining the losses to attribute to the defendant, the district court should consider a variety of relevant factors, but "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." *Paroline*, 572 U.S. at 460.  Those factors include:

- the number of past criminal defendants found to have contributed to the victim's general losses;

- reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

- any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

- whether the defendant reproduced or distributed images of the victim;

- whether the defendant had any connection to the initial production of the images;

- how many images of the victim the defendant possessed; and

- other facts relevant to the defendant's relative causal role.

*Id.*

Sandstrom raises two issues on appeal. First, Sandstrom faults the district court for failing to find explicitly whether the victims had already been awarded more than their total losses. Second, Sandstrom argues that the district court abused its discretion by failing to explain why it awarded more than the average restitution awards that Jenny and Maria had received in prior cases. We address the two issues in that order.[2]

## I. *No explicit finding that the victims had not fully recovered their losses*

In Sandstrom's first issue, he argues that, before ordering restitution, the district court needed to make an explicit finding that the victims had not been awarded more than the total amount of their losses. Because it did not make that finding explicitly, Sandstrom argues the district court had no authority to order him to pay restitution. Sandstrom's claimed procedural

---

[2] Because Sandstrom's arguments fail even if they were properly preserved, we do not consider whether he waived or forfeited them.

error challenges the legality of the restitution awards, which we review *de novo*. *Villalobos*, 879 F.3d at 171.

We consider Sandstrom's focus on the victims' aggregate awards, as opposed to how much they had actually received in restitution payments, to misinterpret the statute. It is true that Section 2259(b)(2)(C) terminates restitution obligations once a victim has actually received restitution payments covering the full amount of her losses. Even so, nothing prevents the victim from being awarded more than her total losses in judgments. *In re Amy Unknown*, 701 F.3d at 771 n.19.[3] The statute operates to prevent more than one full recovery. Because many defendants ordered to pay restitution may be judgment-proof, the statute allows aggregate awards to exceed the victim's total losses so that the victim is more likely to recover in full. *Cf. United States v. Sheets*, 814 F.3d 256, 261–62 (5th Cir. 2016). The statute would operate strangely otherwise. As soon as the victim has "received restitution in the full amount of the victim's losses, . . . the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated." 18 U.S.C. § 2259(b)(2)(C). If Sandstrom's reading were correct, the liability of all defendants subject to restitution awards would be terminated as soon as a victim had been awarded aggregate restitution that exceeds her total losses, regardless of whether she had actually received any of the restitution she was owed. That is not how the requirements for restitution apply.

Properly understood, the statute required the district court to determine only that the victims had not yet *received* restitution payments

---

[3] Although *In re Amy Unknown* was later vacated by the Supreme Court, it was vacated on other grounds, specifically because it erroneously held that a victim's losses under a prior version of Section 2259 were not limited to those proximately caused by the defendant. *Paroline*, 572 U.S. at 443–48, 463.

covering the full amount of their respective losses. The district court did not need to make this finding explicitly, so long as the record provides an adequate basis to support it. *DeLeon*, 728 F.3d at 507. The record provides sufficient support: the victim restitution packets submitted by Jenny and Maria establish that they had each received well below half of their total losses in restitution. Sandstrom did not challenge the accuracy of the victims' claimed losses or the amounts they had received in restitution. The district court did not err in relying on those numbers.

II.    *Awarding more than the average amount of restitution*

In Sandstrom's second issue, he argues that the district court erred by failing to explain why it awarded more than the average restitution awards that Jenny and Maria had received in prior cases. Sandstrom's argument challenges the amount of the restitution awards, which we review for an abuse of discretion. *Villalobos*, 879 F.3d at 171.

The district court must explain its reasoning in determining the amount of restitution. *DeLeon*, 728 F.3d at 507. The district court's explanation here, albeit brief, suffices to allow effective appellate review. *See Chavez-Meza v. United States*, 585 U.S. 109, 115–16 (2018). The district court considered victim restitution packets and a Government summary, which detailed the victims' claimed total losses, the number of restitution orders for each victim, and the average restitution award for each victim. Specifically, Jenny claimed $6,778,912 in total losses (excluding attorney's fees),[4] and she had 791 restitution orders averaging $3,259.52 each. Maria claimed between $124,072.05 and $149,072.05 in losses, and she had 140 restitution orders averaging $3,803.21 each. Jenny and Maria requested $10,000 and $7,500 in

---

[4] We do not mean to suggest that reasonable attorney's fees do not count as losses. The statute specifies that they do. 18 U.S.C. § 2259(c)(2)(E).

restitution, respectively, and their victim restitution packets explained why those values were appropriate under the *Paroline* factors.

In the district court's view, *Paroline* supported that restitution awards should be calculated by "divid[ing] the amount of loss by the number of times it has been viewed." "Unfortunately," the district court continued, "we don't always have that information and we do not have the information in this case as to the total amount of views." The next best pieces of information were the number of restitution orders and the average award for each victim, which the district court did have. The district court, though, found it "confusing" that the average restitution award was higher for Maria than for Jenny, when Jenny claimed "a lot more money" in losses. Accordingly, the district court awarded $4,000 to Maria — close to her average award — and $6,000 to Jenny.

We begin our review of the district court's reasoning by noting that the award to Maria closely approximates the average award she received in prior cases. The difference between the two totals is less than $200, and we decline to find an abuse of discretion in what appears to have been an exercise in rounding to the nearest thousand dollars. As the Supreme Court stated in *Paroline*, the analysis here is not some "rigid formula." 572 U.S. at 460. We hold that the statute does not require a district court to impose the exact average award from prior cases, to the cent, absent a special justification. A proper analysis under *Paroline* "involves discretion and estimation," not "a precise mathematical inquiry." *Id.* at 459, 462. There is necessarily some leeway in the amount of restitution a district court may award, and this award is well within that range.

Next, considering the award to Jenny, the district court did not explain each step of its math, but there is an explanation consistent with the district court's reasoning. Although Jenny claimed $6,778,912 in total losses

(excluding attorney's fees), the estimates actually provided a range of between $3,642,125 and $6,778,912, with an average of $5,210,518.50. Taking that average value and dividing it by the approximately 800 restitution orders nets an award of around $6,500, close to the district court's award of $6,000. The district court likely took a path similar to the one we have just described. If so, the district court's award was designed to split responsibility roughly among the known offenders. Moreover, there is good reason to believe that Sandstrom was more culpable than the average defendant: not only did Sandstrom distribute child pornography, but he was also an administrator in groups that existed for the purpose of distributing it.

The district court did not abuse its discretion in applying the *Paroline* factors. *See United States v. Halverson*, 897 F.3d 645, 653–55 (5th Cir. 2018) (finding no error when the district court took a similar approach).

AFFIRMED.